FRANKLIN, Plaintiff in error, v. STATE, Defendant in error.†

*No. 75–489–CR.  Argued October 5, 1976.—*
*Decided December 14, 1976.*
(Also reported in 247 N. W. 2d 721.)

† Motion for rehearing denied, without costs, on January 18, 1977.

718

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ABRAHAMSON, J. On July 17, 1974, Raymond Berry was shot and killed while painting in the basement of the LaSalle Hotel, located in the city and county of Kenosha. On November 7, 1974, an information was filed alleging that Maurice Franklin (hereinafter sometimes referred to as the defendant) was a party to the first-degree murder of Berry contrary to secs. 940.01 and 939.05, Stats., and a party to attempted armed robbery of Berry contrary to secs. 939.32, 943.32 (1) (a) and (2), and 939.05, Stats. At the time of the offense the de-

fendant was a juvenile, but the police were unable to effect his arrest until he reached age eighteen; he was then prosecuted as an adult. The case was tried to a jury in February, 1975. The jury was instructed with respect to murder in both the first and third degrees as well as attempted armed robbery. It found the defendant guilty of the attempted armed robbery and of murder in the first degree.

A tape recorded confession was given by the defendant to the Kenosha police the day following his arrest. In substance the defendant stated that on the night of July 17th he and three other youths went into the basement of the LaSalle Hotel, apparently intending to rob Raymond Berry. Berry was then engaged in painting a small room in the basement. One youth, fifteen-year old T. M., had a .25 caliber pistol in his hand. Berry put up a struggle when confronted by the group, striking T. M. with his paintbrush, and in the course of the struggle Berry was shot. Defendant never had possession of the gun and took no active part in struggling with the victim. The group fled the scene immediately after the fatal shot was fired.

Defendant moved to suppress this confession, and a hearing on the matter was conducted on February 21, 1975. At the hearing several police officers testified for the state, and that portion of the tape-recorded confession in which defendant was advised of his constitutional rights was played for the court. The defense did not dispute that *Miranda* warnings had been given, but presented the testimony of two psychologists in support of the theory that due to low intelligence and a poor vocabulary the defendant had not understood the rights he purportedly waived. The defendant himself took the stand and after brief background testimony (two pages in the record) he relinquished the stand to allow other witnesses to testify. The hearing was adjourned to 9 a.m.

on February 24, 1975, for the purpose of taking the remainder of the defendant's testimony.

When court was ready to reconvene at 9 a.m. on February 24th the defendant was not present, and his attorney left to get him. In the absence of defendant and his counsel the court reconvened at 9:12 a.m. and proceeded to deny the motion to suppress on the basis of its evaluation of the evidence presented on February 21st. The court then adjourned. Shortly thereafter defense counsel returned, this time with the defendant, and court reconvened at 9:30 a.m. Defense counsel stated that defendant's car had failed to start and that when he arrived at the Franklin house the defendant and his mother were standing on the doorstep waiting for a cab. Counsel then made an offer of proof as to what testimony the defendant would give if allowed to testify. However, the court declined to take this testimony. The court simply restated its analysis of the evidence received on February 21st and redenied the motion to suppress.

At the trial the defendant's recorded confession was played for the jury and, over a defense objection, the tape, together with a tape recorder, was sent into the jury room for use by the jury during its deliberations.

Two issues are dispositive of this appeal:

I. Did the trial court abuse its discretion in failing to reopen the hearing on the motion to suppress defendant's confession for the purpose of allowing the defendant to testify?

II. Was it proper to send the defendant's tape-recorded statement into the jury room during the jury's deliberations?

## I.

Defendant's first contention is that under the circumstances of this case the trial court's refusal to allow him

to testify at the suppression hearing constituted an abuse of discretion. We agree.

■ ■ In *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965), this court adopted the so-called "orthodox" rule regarding determination of admissibility of statements by an accused. The final determination of voluntariness of the statement is made by the court, in the absence of the jury, with the jury's consideration of the confession limited to assessing its credibility and to determining the weight to be accorded it. The burden is upon the state to prove that a statement is voluntary beyond a reasonable doubt. *Id.,* at 264.

*Goodchild* was this court's response to the constitutional requirements announced by the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908 (1964). In that case it was said:

"A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." 378 U.S. at 380.

An opportunity to present evidence is an absolute essential to a fair hearing on a disputed question of fact. We think it evident that the right to a fair hearing which *Goodchild* implemented included the right on the part of the defendant to a full opportunity to present evidence showing that his statement was not voluntarily made. We said in *Goodchild* (p. 265) that at the hearing on the issue of voluntariness

". . . the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained. By so doing, the defendant does not waive his right to decline to take the stand in his own defense on the trial in chief. Neither does he waive any of the other rights stemming from his choice not to testify."

■ A criminal defendant is not required to testify in his own behalf, but where a defendant desires to testify at a pre-trial hearing on the admissibility of his statement, fundamental considerations of fairness and justice embodied in the concept of due process of law dictate that he be granted every reasonable opportunity to do so. A defendant's stake in proceedings such as those involved here is so great and his knowledge of matters normally inquired into so immediate that his right to testify in his own behalf may be curtailed, if at all, only for the most compelling reasons.

We find no such compelling reasons to justify the trial court's action in the case at bar. The infringement on the defendant's opportunity to testify was great; he was effectively prevented from testifying altogether. His counsel's offer of proof reveals that the foreclosed testimony was material and, if believed by the trial court, might have led to suppression of his statement. The state has argued that much of the defendant's offered testimony was cumulative of evidence introduced through other witnesses, but the record fails to support this assertion, and in any event we doubt that a court's discretion to limit cumulative testimony would ever justify curtailing a criminal defendant's testimony on the ground that other witnesses had testified to the same facts. *Cf. Mack v. State*, 48 Wis. 271, 277–78, 4 N.W. 449 (1880); *State v. Lenarchick*, 74 Wis.2d 425, 247 N.W.2d 80.

The delay in proceedings occasioned by the defendant's late arrival was relatively small—thirty minutes, at the most. It was winter in Wisconsin; the judge noted the conditions and did not find them a sufficient excuse. "[T]he Court is aware of what weather conditions are . . . and I feel that the roads are sufficiently—in sufficiently good condition for the defendant to be here as

well as his attorney." When defendant did arrive his counsel informed the court that defendant had experienced car trouble and that defendant and his mother were waiting for a cab when counsel arrived to pick them up. The record affirmatively shows that with this one exception the defendant was meticulous in appearing in court when required and that defendant's conduct was at all times respectful and proper; we do not here deal with a defendant who was habitually late or lacking in respect for the administrative requirements of the court.

We are not unmindful that courts have a legitimate interest in maintaining order in their calendars. The press of other business was the principal reason why the court declined to take the defendant's testimony in this case. At the close of proceedings on February 21st the court had warned the parties that it would have other matters pending on February 24th. We do not say that a defendant's disregard for time schedules set by a court may never be such as to amount to a waiver of his right .to present evidence at a suppression hearing. However, under the circumstances of this case, the trial court should have made such adjustments in its calendar as would have been necessary to allow the defendant a reasonable opportunity to testify. The court's failure to permit the defendant to testify stands in marked contrast to the solicitude for the defendant's rights the court generally demonstrated. Nevertheless, the court's failure to permit the defendant to testify constituted an abuse of discretion and a denial of due process of law.

■ We cannot accept the state's argument that the defendant is foreclosed from raising this issue because he failed to move the trial court to reopen testimony. It is true that no such specific motion was made and that it would have been better practice had counsel done so. However, an offer of proof was made, which would have had no purpose except as a request to present the testi-

mony offered, and the record indicates that it was so understood by the trial court. The absence of a formal motion is here a mere technicality which should not bar review by this court. Nor do we find persuasive the state's assertion that the trial court listened to the defendant's offer of proof and had it "in mind" when it redenied the motion to suppress. The trial court clearly did not accept as established facts the matters asserted in the offer of proof. Under the circumstances the state's position amounts to an assertion that the trial court could properly judge the credibility of testimony it had not even heard. The statement of such a proposition is sufficient to show its invalidity. The trial court would not have been required to believe the defendant's testimony, but the court was required to allow that testimony to be given. No valid determination of the admissibility of the defendant's confession has been made as required by *Goodchild* and *Jackson v. Denno*. The state's case depended on that confession. The defendant's conviction therefore cannot stand.

## II.

Defendant assigns as error the trial court's decision to send the tape of his statement to the police, along with a tape recorder, into the jury room during the jury's deliberations. We cannot approve of this practice which entails the risk of breakage or accidental erasure of the tape while it is beyond the trial court's supervision and which presents the danger of overemphasis of the confession relative to testimony given from the witness stand.[1] We are of the opinion that the proper practice and procedure is that the trial court retain control of the

---

[1] *See Payne v. State*, 199 Wis. 615, 227 N.W. 258 (1929).

jury's exposure to confessions. If during the course of its deliberations the jury requests to hear a recorded confession replayed or a written confession reread, it is within the trial court's discretion to grant such request. *See State v. Hunt,* 53 Wis.2d 734, 748, 193 N.W.2d 858 (1972). The jury should then return to the courtroom, and the confession should be read to or played for the jury there.

### III.

Defendant also contends that the evidence was insufficient to sustain the verdict in two respects. We reach this question notwithstanding the fact that a new trial is required for other reasons, because the double jeopardy clause of the Constitution may bar a second trial for an offense if a conviction is reversed for insufficiency of the evidence. *See State v. Detco, Inc.,* 66 Wis.2d 95, 223 N.W.2d 859 (1974). Defendant claims that the evidence fails to show that he was party to a conspiracy to commit armed robbery[2] and that it fails to show the specific intent to take a human life on the part of T. M., who undisputedly was the person holding the gun when the fatal shot was fired.

■ We have phrased the standard of review when a jury verdict is challenged as being unauthorized by the evidence in the following terms:

" 'The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true.' " *Garrella v. State,* 61 Wis.2d 351, 352, 353, 212 N.W.2d 101 (1973).

[2] At the trial the prosecution elected to proceed under the conspiracy provisions of sec. 939.05, Stats.

Viewing the record as a whole, we cannot say that the jury could not properly have found beyond a reasonable doubt that the defendant was a party to the conspiracy and that T. M. shot Raymond Berry with the intent to take his life. Defendant's challenges to the sufficiency of the evidence cannot be sustained.

*By the Court.*—Judgment reversed and cause remanded with instructions to grant the defendant a new hearing on the admissibility of the confession and a new trial consistent with this opinion.