UNITED STATES of America,
Plaintiff–Appellee,

v.

Phillip HOFER, Defendant–Appellant.

No. 92–4145.

United States Court of Appeals,
Seventh Circuit.

Argued May 4, 1993.

Decided June 9, 1993.

Robert Anderson, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

David L. Mandell (argued), Rick B. Meier, Mandell & Ginsberg, Madison, WI, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILLIAMS, Senior District Judge.*

* The Honorable Spencer M. Williams, of the United States District Court for the Northern District of California, is sitting by designation.

RIPPLE, Circuit Judge.

A jury convicted Phillip Hofer of conspiring to distribute lysergic acid diethylamide (LSD). *See* 21 U.S.C. §§ 841 and 846 (1988). At sentencing, the district court determined that Mr. Hofer had perjured himself at trial and enhanced his base offense level two points for obstruction of justice. *See* U.S.S.G. § 3C1.1. On appeal, Mr. Hofer challenges both an evidentiary ruling of the district court and the two-point enhancement. For the reasons that follow, we affirm.

## I

In May 1991, the Monroe Police Department became suspicious that Michael Hess was distributing LSD to minors in Monroe, Wisconsin. Although a mail watch was unsuccessful in intercepting drugs, an undercover agent later purchased several "hits"[1] of LSD from Hess. Hess was placed under arrest and advised that he could face a mandatory prison sentence of five to forty years. In order to avoid such a harsh result, Hess entered a plea agreement with the prosecutor and agreed to cooperate fully with the police. In exchange for his acceptance of responsibility and substantial cooperation with the government, Hess received a reduced sentence of nineteen months' imprisonment.

As part of his cooperation, Hess told the police that he had received three shipments of LSD in the mail from Phillip Hofer, a former high school friend, who was then residing in California. According to Hess, he received the three shipments in January, February, and April of 1991. At the request of the Monroe police, Hess agreed to attempt to induce Mr. Hofer to send an additional shipment of LSD so that the police could arrest Mr. Hofer for drug trafficking. Accordingly, Hess consented to have the police record two telephone conversations he placed to Mr. Hofer. Hess placed the first call on May 31, 1992. The essence of the conversation was that Mr. Hofer was upset because Hess had not paid him for the April shipment. At the government's urging, Hess promised to send $400 by express mail and told Mr. Hofer that he needed more LSD because many people were asking for it. Initially, Mr. Hofer expressed reluctance to send any more LSD. However, upon Hess' promise that it would be the last time and that all the proceeds would go to Mr. Hofer, he agreed. Government's Ex. 2A. Hess sent the money order; however, Mr. Hofer did not send the requested shipment of LSD. Thus, on July 22, again under police monitoring, Hess placed the second call to find out why Mr. Hofer had not sent the shipment. In this conversation, Mr. Hofer indicated that he was not going to send any more LSD because the police in Monroe knew something about him and probably also knew something about Hess. Government's Ex. 3A at 3–4.

On July 29, 1992, Mr. Hofer was arrested and charged with conspiracy to distribute LSD. At his arraignment Mr. Hofer pled not guilty and his case proceeded to trial on October 19. The government introduced into evidence the two tape-recorded conversations between Hess and Mr. Hofer. Pursuant to a motion in limine filed by Mr. Hofer, the tape recordings, before being placed into evidence, had been edited to delete prejudicial matter not directly relevant to the charges. The government also introduced into evidence written transcripts of the redacted tapes. The government did not introduce at trial any LSD that it could connect directly to Mr. Hofer or any money order receipts. The only physical evidence that Mr. Hofer introduced was a copy of Hess' plea agreement. Mr. Hofer maintained his innocence and testified on his own behalf. The government's main trial witness was Hess.[2] According to Hess, Mr. Hofer had visited Monroe in December of 1990 and had suggested that LSD could be obtained cheaply in San Francisco and mailed to Monroe, where Hess

---

1. A "hit" of LSD is a piece of paper about one centimeter square with the liquid drug on it. According to Hess, Mr. Hofer obtained the LSD for approximately 30 cents per hit and Hess resold the drug for $4 to $7 per hit.

2. In exchange for Hess' cooperation in testifying against Mr. Hofer, the government promised to file an additional motion with the court requesting a further reduction in his sentence, pursuant to § 5K1.1 of the Sentencing Guidelines.

could sell it at a substantial profit. According to Hess, he agreed and Mr. Hofer sent him three shipments of LSD, each containing approximately 180 "hits."

Mr. Hofer's defense was that he was merely "pretending" to be Hess' LSD source because Hess, his friend, was in trouble. According to Mr. Hofer, Hess contacted him several days before the first taped conversation and asked him to "play along" so that Hess could hide his true source and receive a reduced sentence for cooperating with the police. Mr. Hofer testified that he knew that the police were listening to the conversations and that he thought he could not get into any trouble for pretending because he neither sent nor intended to send any LSD. Finally, Mr. Hofer testified that he had never sold drugs in Monroe or elsewhere. Tr. of Oct. 21, 1992 at 47.

The two tapes were played in full at trial and, over repeated defense objections, the jury had unrestricted access to the tapes and a tape player during its deliberations.[3] The jury deliberated for two hours the evening the trial recessed and for an additional three hours the next morning. There is no way to know whether or how many times the jury played the tapes during the five hours it deliberated. The jury returned a guilty verdict.

After the guilty verdict, a pre-sentence report (PSR) was prepared by the Probation Office. The PSR recommended a two-point enhancement under Sentencing Guideline § 3C1.1 for obstruction of justice on the ground that Mr. Hofer perjured himself at trial. The district court adopted the PSR recommendation and sentenced Mr. Hofer to eighty-seven months' imprisonment, to be followed by four years' supervised release. The district court noted on the record that Mr. Hofer was being sentenced at the bottom of the applicable sentencing range because of his youth and "poor parental influences in his early childhood." Tr. of Dec. 17, 1992 at 25. Mr. Hofer appeals both the conviction and the sentencing. We now address his arguments in turn.

## II

### A.

◼ Mr. Hofer first argues that the district court erred in allowing the tape recordings of the two telephone conversations he had with Hess and a tape player into the jury room during deliberations. Specifically, Mr. Hofer objects to the district court's decision not to limit or supervise the jury's unrestricted access to the tapes. He asserts that the tapes were the linchpin of the government's case and were played during its case in chief and as part of the government's closing argument. Thus, submits Mr. Hofer, the effect of allowing the tapes and a tape player into the jury room was to allow the jury to hear the government's closing argument over and over again, while the defense's case was given no equivalent reinforcement.

◼ We review a district court's decision to allow exhibits into the jury room for an abuse of discretion. *United States v. Welch,* 945 F.2d 1378, 1383 (7th Cir.1991), *cert. denied,* ─── U.S. ───, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992); *United States v. Samples,* 713 F.2d 298, 303 (7th Cir.1983). This discretion is not limited when the exhibits are audio tape recordings. *Id.*[4] The tapes

---

**3.** The district court denied the government's request to allow the written transcripts into the jury room.

**4.** We note that, had the district court attempted to control the jury's access to the tapes, the possibility of outside influences infecting the deliberations might have arisen. *See United States v. Brown,* 832 F.2d 128, 130 (9th Cir.1987) (improper to allow a case agent to replay tape recordings for the jury during deliberations because even a subtle motion or nod during a significant portion of the tape could be prejudicial); *United States v. Kupau,* 781 F.2d 740 (9th

Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986) (same).

Mr. Hofer invites our attention to *United States v. Sobamowo,* 892 F.2d 90 (D.C.Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 78, 112 L.Ed.2d 51 (1990), as support for the proposition that when audio tape evidence is replayed for the jury during deliberations the trial court ought to exercise some form of supervision. *Id.* at 96. *Sobamowo* cannot be read so broadly. The court in *Sobamowo* held that replaying the tapes during deliberations is not a stage in the trial that implicates the Confrontation Clause. Nor did the court find a due process violation. Thus, the

were an important piece of evidence at Mr. Hofer's trial. Mr. Hofer did not deny that the tape recordings correctly reflected his conversations with Hess. Rather, his defense was that he was merely pretending to be Hess' LSD source during the taped conversations. Accordingly, it was the jury's duty to evaluate Mr. Hofer's tone, inflections, and demeanor on the tapes to determine whether he was merely pretending or whether he was in fact Hess' LSD source.[5] In order to perform this duty conscientiously, it may have been necessary for the jury to play the tapes repeatedly as its deliberations progressed.

■ As we held in *Samples*, as long as the district court is evenhanded in its evidentiary rulings, the district court has wide discretion in determining whether an exhibit will be allowed to go into the jury deliberation room. 713 F.2d at 303. Here, no claim can be made that the district court treated the defendant's exhibits less charitably than the govern-

ment's. The district court also allowed Mr. Hofer's only evidentiary exhibit, a copy of Mr. Hess' plea agreement, to be taken into the jury room. Accordingly, we cannot accept Mr. Hofer's assertion that the jury had unlimited access to the government's case while his case was allowed to become remote in the jurors' memories by the end of deliberations. Given the highly probative nature of the tapes, we cannot conclude that the district court abused its discretion in allowing the tapes and tape player to go into the jury room.

## B.

■ At sentencing, the district court increased Mr. Hofer's offense level by two points for obstructing justice by perjuring himself at trial. *See* U.S.S.G. § 3C1.1.[6] Mr. Hofer argues that the district court failed to consider his testimony in the light most favorable to the defense.[7] We disagree.[8]

court found no constitutional violation when the tapes were replayed in the defendant's absence. The court went on to state, in dicta, that, even had there been error, it would have been harmless given the fact that the district court and defendants' counsel had been present to protect the defendants' rights. The court did not hold that the district court or defendants' counsel *must* be present during replaying of tape-recorded evidence during deliberations.

Mr. Hofer also argues that state courts have recognized the dangers of allowing tape-recorded evidence to go into the jury room and have required safeguards to reduce the possible prejudice to a defendant. Specifically, Mr. Hofer invites our attention to two cases. In *State v. Frazier*, 99 Wash.2d 180, 661 P.2d 126 (1983), the state trial court admitted tapes to the jury room, but retained control of the tape player so that the court would be aware of the number of times that the jury replayed the tapes. On appeal, the Supreme Court of Washington found no error in the trial court's decision. *Id.* 661 P.2d at 132. *Frazier* is not inconsistent with the district court's discretionary decision in the present case. The second state case that Mr. Hofer relies upon is *Franklin v. State*, 74 Wis.2d 717, 247 N.W.2d 721 (1976). In *Franklin*, the Supreme Court of Wisconsin found that sending a tape-recorded confession into the jury room created a "danger of overemphasis of the *confession* relative to testimony given from the witness stand." *Id.* 247 N.W.2d at 725 (emphasis added). However, the court went on to state that as a matter of "proper practice and procedure," trial courts should retain control of jury exposure to all confessions, both written and recorded. *Id.* Thus, it

was not the form (audio tapes), but the content (confessions), of the evidence that concerned the court. Accordingly, *Franklin* is inapposite.

5. In denying the government's request that transcripts of the tapes be given to the jury, the district court noted the importance, in this case, of the jury's evaluation of the tapes:

   The focus of the case is on the tapes. What did Mr. Hofer mean when he was talking on the phone? And it's appropriate for the Jury to have that to listen to so that they can decide what it is that Mr. Hofer was doing when he was in that phone conversation.

   Tr. of Oct. 22, 1992 at 4.

6. Section 3C1.1 provides:

   If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. U.S.S.G. § 3C1.1.

7. In support of his contention, Mr. Hofer invites our attention to the commentary to § 3C1.1, which provides that "testimony and statements should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1, Application Note 1. *See also Stinson v. United States*, —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (the Guidelines' commentary is authoritative as long as it is not unconstitutional, or inconsistent with, or a plainly erroneous interpretation of the Guidelines). Mr. Hofer is correct that a trial court when possible must consider testimo-

8. See note 8 on page 750.

"Although a district court should not automatically enhance the sentence of every defendant who takes the stand and is then convicted, we review a sentencing court's determinations with deference." *United States v. Wilson*, 985 F.2d 348, 354 (7th Cir.1993). A sentencing court's determination that the defendant obstructed justice is a finding of fact and may be reversed only if it is clearly erroneous. *United States v. Dominguez*, 992 F.2d 678, 685 (7th Cir.1993); *United States v. Casanova*, 970 F.2d 371, 377 (7th Cir.1992). In *United States v. Easley*, 977 F.2d 283 (7th Cir.1992), the defendant urged, as does Mr. Hofer, that the district court erred in failing to evaluate his testimony in the light most favorable to the defense. In *Easley*, we concluded that, in order to give an obstruction of justice enhancement, "[a]ll that the district court must do is make a specific, independent finding that a defendant was less than truthful when he testified." *Id.* at 286.

At the sentencing phase, the district court was "convinced beyond a reasonable doubt that Mr. Hofer told a fabricated story on the witness stand [and that his testimony] ... was outrageously untrue." Sentencing Tr. of Dec. 17, 1992 at 20. Specifically, the district court determined that:

> It made absolutely no sense whatsoever for him to ... go along with Michael Hess and pretend that he was his drug supplier in a telephone call that was going to be taped by the police. In other words incriminate himself in a serious, serious crime just as a favor to somebody he didn't even know all that well when he was going to be back in Monroe. It just didn't make any sense at all.

*Id.* Accordingly, we cannot agree that the district court failed to make an indepen-

dent judgment that Mr. Hofer lied on the stand. Nor are we persuaded that the independent assessment was clearly erroneous.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

ny in a light most favorable to the defense. Nonetheless, a non-exhaustive list of the types of conduct for which a § 3C1.1 enhancement may be appropriate is set forth in Application Note 3. Note 3(b) specifically lists "committing perjury, suborning, or attempting to suborn perjury." Accordingly, the commentary adds little to Mr. Hofer's more *general* argument that the district court abused its discretion in determining that he committed perjury at trial.

**8.** In his initial appellate brief, Mr. Hofer also argued that the upward enhancement for ob-

struction of justice violated his constitutional right to testify on his own behalf. As Mr. Hofer conceded at oral argument, this argument recently was foreclosed by the Supreme Court in *United States v. Dunnigan*, — U.S. —, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In *Dunnigan*, the Court held that the constitutional right to testify does not include the right to commit perjury. *Id.* at —, 113 S.Ct. at 1112.