STATE of Wisconsin, Plaintiff-Respondent,

v.

Alexander MARINEZ, Defendant-Appellant.†

Court of Appeals

*No. 2009AP83–CR. Submitted on briefs November 16, 2009. —Decided February 25, 2010.*

2010 WI App 34

(Also reported in 781 N.W.2d 511.)

† Petition to Review denied w/o costs on 5/13/10.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David D. Leeper* of *Leeper Law & Mediation*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine A. Remington*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Dykman, P.J., Vergeront and Lundsten, JJ.

1. VERGERONT, J. Alexander Marinez appeals the judgment of conviction for sexual assault of a child under the age of twelve, contrary to Wis. Stat. § 948.02(1)(b) (2007–08),[1] and the order denying his motion for a new trial. Marinez raises two claims of ineffective assistance of counsel. The first is based on defense counsel's failure to object when the prosecutor played during closing argument an edited portion of the child's video statement, which had been admitted at trial pursuant to § 908.08. We conclude that § 908.08 does not preclude playing during closing argument a child's video statement that has been properly admitted into evidence pursuant to the statute. We also conclude that the due process guarantee of a fair trial does not preclude the playing during closing argument of video

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

statements that have been properly admitted into evidence. Accordingly, defense counsel did not perform deficiently in failing to object on either of these grounds.

¶ 2.  Marinez's second claim centers on defense counsel's failure to request a read-back of a portion of the child's trial testimony in response to the jury's question about the child's testimony. We conclude defense counsel made a reasonable strategic decision in asking the court to instruct the jury to rely on its collective memory.

¶ 3.  Because we reject Marinez's claims of ineffective assistance of counsel, we affirm the judgment of conviction and the order denying his motion for a new trial.

## BACKGROUND

¶ 4.  Marinez was charged with having sexual intercourse with his niece, A.M., then eight years old, and having sexual contact with his niece, K.A., then five years old. Pursuant to the State's motion, the circuit court admitted at trial an audiovisual recording of statements made by each child. Each child was also called as a witness by the State.

¶ 5.  By stipulation of the parties, the jury was informed that the girls' father, Marinez's brother, had been convicted of sexually assaulting them and their brother. Marinez's defense was that the State had not proved its case beyond a reasonable doubt because the girls were traumatized and confused as a result of their father's assaults and their statements and testimony contained inconsistencies and uncertainties.

¶ 6.  At the conclusion of the trial, while the jury was out of the courtroom, the prosecutor stated that he intended to offer edited portions of the video state-

ments during his closing argument. In response to the court's question whether this was all right with the defense, defense counsel answered that it was. The court replied, "That's what we'll do." The prosecutor then showed the jury during his closing argument edited portions of the children's video statements.

¶ 7.  After about three hours of deliberation, the jury submitted a written question:

We would like to hear/have read to us [A.M.'s] testimony on the stand. Something close to:

Did Alex do something you didn't like or you didn't want to do? Or

Did Alex ever make you do anything you didn't want to do?

Answer 'Never.' . . . (2nd question) . . . "A little" . . . Anything.

¶ 8.  The court reporter had already left the courthouse. The circuit court suggested two alternatives: telling the jury the testimony was unavailable to be read back and they must rely on their collective memory; or trying to get the court reporter to return, which would take about a half hour. Defense counsel stated that he preferred to tell the jurors to rely on their collective memory, and the prosecutor stated he had no strong feeling one way or the other. The court decided to respond to the jury's question with a note that said, "This testimony is unavailable for read back at this time. Rely on your collective memory."

¶ 9.  The court also contacted the court reporter. Approximately thirty minutes later, the court reporter returned to the courtroom, prepared to read back A.M.'s testimony. Just as the court was about to direct the

bailiff to bring in the jury so the testimony could be read back, the bailiff reported that the jury had reached a verdict. The court asked both attorneys if they objected to receiving the verdict, rather than doing the read-back and sending the jury back to deliberate, and neither attorney objected.

¶ 10.   The jury returned to the courtroom with its verdicts. The jury found Marinez guilty of sexually assaulting A.M. and not guilty of sexually assaulting K.A.

¶ 11.   Marinez filed a motion for a new trial alleging ineffective assistance of counsel because defense counsel (1) failed to object to the State showing portions of A.M.'s video statement during closing argument; and (2) in response to the jury's question, did not ask for a read-back but instead agreed that the jury should be instructed to rely on its collective memory. The circuit court denied the motion, concluding defense counsel was not deficient on either ground.

## DISCUSSION

I.   Audiovisual Recording of Child's Recorded Statements Played During State's Closing

¶ 12.   Marinez contends defense counsel was ineffective for not objecting when the State announced it intended to play an edited portion of A.M.'s video statement. According to Marinez, playing the video statement during closing argument violated Wis. Stat. § 908.08, the statute authorizing admission of the recording at trial, and violated his right to due process under the Fourteenth Amendment to the United States Constitution. Marinez asserts that defense counsel

should have requested that the State be allowed to present only the transcript of the statement, not the video.[2]

¶ 13.   In order to establish ineffective assistance of counsel, Marinez must show that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our analysis in this case focuses on whether counsel performed deficiently. To the extent the circuit court made factual findings regarding counsel's performance, we uphold these unless clearly erroneous, but whether counsel's performance was deficient under the constitutional standard presents a question of law, which we review de novo. *See State v. Doss*, 2008 WI 93, ¶ 23, 312 Wis. 2d 570, 754 N.W.2d 150. Where, as here, the basis for the assertion of deficient performance presents an issue of statutory construction and an issue of the correct application of the due process guarantee, our

---

[2] Although Marinez argues ineffective assistance of counsel, he also asks that we review his statutory and due process arguments directly. He cites to *State v. Anderson*, 2006 WI 77, ¶ 26, 291 Wis. 2d 673, 717 N.W.2d 74, for the proposition that an appellate court may review an alleged error that was not properly preserved in the circuit court if it raises a question of sufficient public interest and involves purely a question of law. While we recognize our authority to directly address waived claims of error in the circumstances *Anderson* describes, the normal procedure is to address them in the framework of ineffective assistance of counsel. *See State v. Carprue*, 2004 WI 111, ¶ 47, 274 Wis. 2d 656, 683 N.W.2d 31. We see no reason to depart from the normal procedure here. In any event, we note that in this case it does not matter whether we proceed as did the *Anderson* court or employ the ineffective assistance of counsel framework.

review of these issues is de novo. *See Kenosha County DHS v. Jodie W.*, 2006 WI 93, ¶ 19, 293 Wis. 2d 530, 716 N.W.2d 845.

■

¶ 14.  We turn first to Marinez's statutory argument. WISCONSIN STAT. § 908.08(1) authorizes the court to admit into evidence at a criminal trial the audiovisual recording of a child's oral statements if the child is available to testify and if certain other conditions are met. The conditions include the procedure for determining admissibility and the substantive requirements, which, in general, relate to trustworthiness, fairness, and the need to minimize the strain on the child of testifying in court. § 908.08(2)-(4).³

¶ 15.  The condition on which Marinez focuses is WIS. STAT. § 908.08(5)(a), which addresses the child's testimony at trial:

> If the court or hearing examiner admits a recorded statement under this section, the party who has offered the statement into evidence may nonetheless call the child to testify immediately after the statement is shown to the trier of fact. Except as provided in par. (b), if that party does not call the child, the court or hearing examiner, upon request by any other party, shall order that the child be produced immediately following the showing of the statement to the trier of fact for cross-examination.

¶ 16.  Marinez relies on the portion of this statute requiring that the child "be produced immediately fol-

---

³ Besides meeting the requirements of WIS. STAT. § 908.08(2)-(4), an audiovisual recording of a child's oral statement may also be admitted if it is hearsay and admissible under one of the hearsay exceptions in § 908.03. *See* § 908.08(7); *State v. Snider*, 2003 WI App 172, ¶ 12, 266 Wis. 2d 830, 668 N.W.2d 784.

lowing the showing of the statement to the trier of fact for cross-examination." WIS. STAT. § 908.08(5)(a). Marinez reasons that because no witness can be called to testify during closing argument, it follows that the statute prohibits a "showing" of a video statement during closing argument. We disagree.

■■

¶ 17. When we construe a statute, we give the words their ordinary meaning and we interpret the language reasonably and in the context in which it is used. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110. We also consider the purpose of the statute insofar as it is ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If this process yields a plain meaning, then we apply the statute according to that plain meaning. *Id.*, ¶ 46.

¶ 18. The plain language of WIS. STAT. § 908.08 establishes a procedure and substantive standards for admission of an audiovisual recording of a child's oral statement *as evidence* at the trial. There is nothing in the statute that suggests it is intended to address the use of this evidence during closing argument. Section 908.08(5) prescribes how the child's availability to testify—a requirement of § 908.08(1)—is to be implemented: both the party presenting the video statement and any other party have the right to question the child immediately after the video statement is shown to the jury. With respect to the defendant, the evident purpose of this requirement is to give him or her the right to cross-examine the child immediately after the jury has seen and heard the video statement—just as if the child had directly testified to the statement at trial. As the statute requires, Marinez had that opportunity.

¶ 19. Marinez makes another argument based on Wis. Stat. § 908.08. He asserts that, because the statement of the child is testimony, it must be used in the way that other testimony is used during closing argument—recalled from notes or presented to the jury by reading from a transcript of the testimony. Marinez relies on *State v. Ruiz-Velez*, 2008 WI App 169, ¶ 5, 314 Wis. 2d 724, 762 N.W.2d 449. In *Ruiz-Velez*, we held that the video statement of a child admissible under § 908.08 is testimony, supplemented by in-court testimony as provided in § 908.05(5); therefore, it must be reported by a court reporter pursuant to § 885.42(4), which requires that testimony presented by video must be recorded.[4] *Ruiz-Velez*, 314 Wis. 2d 724, ¶¶ 4–5. Nothing in our reasoning or conclusion in *Ruiz-Velez* suggests that, because the video statement is testimony, it cannot be played during closing argument.

[4] In *State v. Ruiz-Velez*, 2008 WI App 169, ¶ 6, 314 Wis. 2d 724, 762 N.W.2d 449, we also relied on Supreme Court Rule 71.01(2), which was later amended and no longer requires video statements played during the proceeding to be reported. SCR 71.01(2)(e) now provides that: "All proceedings in the circuit court shall be reported, except for the following: . . . (e) Audio recordings of any type that are played during the proceeding, marked as an exhibit, and offered into evidence. If only part of the recording is played in court, the part played shall be precisely identified in the record." SCR 71.01(2)(e), created by Supreme Court Order 09–05, 2009 WI 104 (eff. Jan. 1, 2010). The order, dated December 11, 2009, also requires the Committee of Chief Judges and District Court Administrators to collaborate with appellate practitioners and other interested parties to evaluate whether amendments to Wis. Stat. § 885.42(4) may be warranted. The creation of SCR 71.01(2)(e) and the potential amendment to Wis. Stat. § 885.42(4) do not affect our conclusion that *Ruiz-Velez* does not support Marinez's position.

¶ 20. We conclude that WIS. STAT. § 908.08 does not prohibit playing at closing argument a child's video statement properly admitted at trial. Accordingly, defense counsel did not perform deficiently in failing to object on this ground.

■■■■

¶ 21. Next we consider Marinez's due process argument. The due process clause of the Fourteenth Amendment guarantees a defendant in a criminal case a trial that is fundamentally fair. *State v. Disch*, 119 Wis. 2d 461, 477, 351 N.W.2d 492 (1984). A prosecutor's conduct during closing argument results in a denial of this right if it is misconduct, and only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992) (citation omitted).

¶ 22. Marinez contends that playing portions of A.M.'s video statement during closing argument made the trial fundamentally unfair because a video of a witness's statement is so much more powerful than reading a transcript of the statement or recounting the statement from notes. As we understand Marinez's argument, it is not based on particular aspects of the use of the video at closing in this case. That is, Marinez does not argue that an unfair trial resulted from the prosecutor's editing of the video so as to distort the contents or that the presentation was unduly long.[5] Rather, the unfairness, according to Marinez, results from the inherently compelling nature of seeing and

[5] The entire video of A.M.'s statement played at trial was approximately seventeen and a half minutes and the edited version the State played at closing was approximately four minutes.

hearing the witness—especially a young, vulnerable child—rather than listening to a transcript or a summary of testimony.

■

¶ 23. Both Marinez and the State agree that no Wisconsin case has addressed the issue of playing at closing argument video statements that have been properly admitted into evidence. The general rule in Wisconsin is that counsel has wide latitude in closing argument, but the control of the content, duration, and form of the closing argument is within the sound discretion of the circuit court. *State v. Lenarchick*, 74 Wis. 2d 425, 457, 247 N.W.2d 80 (1976).

¶ 24. Marinez finds support for a different rule for video statements—a rule precluding their use in closing argument—in *State v. Anderson*, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74. *Anderson* addressed a circuit court's decision to allow the jury during deliberations to hear and see the victim's video interview in the jury room. The supreme court concluded this was error because the proper procedure, established in *Franklin v. State*, 74 Wis. 2d 717, 724–25, 247 N.W.2d 721 (1976), is for the jury to return to the courtroom to hear and see the recording. *Anderson*, 291 Wis. 2d 673, ¶ 30. "This procedure minimizes the risk of breakage or erasure of the recording and, more importantly, allows a circuit court to guide the jury, with the assistance of all counsel, so that no part of the recording is overemphasized relative to the testimony given from the witness stand." *Id.*

¶ 25. While the *Anderson* court's analysis recognizes a significant distinction between video statements and other types of exhibits a jury views in the jury room, that analysis does not support Marinez's position that no video statements may be played at closing. The

295

*Anderson* ruling requires the video to be played in open court precisely because the court, with the input of counsel, can thereby control the playing of the video for the jury. Allowing the court to exercise its discretion to control the playing of video statements during closing argument is consistent with *Anderson*.[6]

¶ 26.   Looking to cases outside Wisconsin, Marinez argues that we should adopt the approach of *People v. Ammons*, 622 N.E.2d 58 (Ill. App. Ct. 1993). In *Ammons*, the court concluded that the circuit court acted improperly in allowing the prosecutor to replay on rebuttal the eighteen-minute audiotaped statement of the defendant. *Id.* at 60. This conclusion was based on the rule established in prior Illinois cases that reading from a transcript during closing argument is improper because "[t]he jury must pass upon the whole

---

[6] Marinez also cites this statement from *Anderson*:   "The circuit court's permitting the jury to see and hear the victim's entire videotaped interview in the jury room overemphasized the State's evidence and the victim's out-of-court statements." *Anderson*, 291 Wis. 2d 673, ¶ 103. The context of this statement is important. The *Anderson* court at this point was discussing the issue whether "the circuit court erred by refusing the jury's requests to have the defendant's and the victim's in-court testimony read to it while allowing the jury during deliberations to see and hear the victim's videotaped interview." *Id.*, ¶ 82. The court concluded this was an erroneous exercise of discretion, in part because the court failed to consider that it had allowed the jury to hear and see the victim's entire videotaped interview in the jury room. *Id.*, ¶ 100. The disparity in how the circuit court treated the victim's video statement, on the one hand, and the defendant's and victim's in-court testimony, on the other hand, is what caused the "overemphasis." The *Anderson* court is not making a general statement that a jury's viewing of a victim's video statement, after the close of evidence, is always an improper overemphasis.

testimony free of the overemphasis given any portion of it by verbatim repetition during the trial's waning moments." *Id.* The court concluded that the replaying of the statement "dramatically overemphasized its credibility . . . [and thus] the defendant was severely prejudiced." *Id.*

¶ 27.    The *Ammons* court does not provide persuasive reasoning for a Wisconsin court because the rule it invokes on reading from transcripts is inconsistent with Wisconsin law. In Wisconsin, it is error for a circuit court to prohibit altogether the reading of transcripts at closing argument, although it may control the reading so it is not unduly time consuming and so that the portions selected do not give an undue emphasis. *Lenarchick*, 74 Wis. 2d at 458.

¶ 28.    We also observe that a later Illinois Court of Appeals opinion does not read *Ammons* to establish a general prohibition on playing video statements during closing argument. In *People v. Gross*, 637 N.E.2d 789 (Ill. App. Ct. 1994), the circuit court permitted the prosecutor to replay eight excerpts of the video police interview of the defendant for the purpose of pointing out inconsistencies between the interview and the defendant's trial testimony. *Id.* at 791. The appellate court concluded this was a proper exercise of discretion and distinguished it from *Ammons* because there the taped statement was "substantially similar to the defendant's testimony, so that replaying it in its entirety placed undue emphasis on its contents." *Gross*, 637 N.E.2d at 792. Whether this distinction is sound may be questionable, but that is beside the point. The point is that, even within Illinois, *Ammons* is apparently not viewed as establishing the general prohibition that Marinez urges.

¶ 29. Our own research has not yielded a case from another jurisdiction holding that use of video statements at closing violates the due process clause— either as a general proposition or in the particular case. On the other hand, we have located a number of cases from other jurisdictions that, like *Gross*, commit the decision to the circuit court's discretion. *See Hodges v. State*, 392 S.E.2d 262, 263 (Ga. Ct. App. 1990) (replay of portion of video statement during closing is not a recall of a witness but a verbatim repetition of testimony already in evidence, and circuit court did not erroneously exercise discretion in permitting it rather than reading from a prepared transcript); *Fields v. Commonwealth*, 12 S.W.3d 275, 281–82 (Ky. 2000) (attorneys are generally allowed to replay excerpts from recorded testimony during closing argument but the repetition of an inadmissible recorded statement in its entirety during closing argument was prejudicial error); *State v. Muhammad*, 820 A.2d 70, 80 (N.J. Super. Ct. App. Div. 2003) (declining to adopt a per se rule barring use of a video statement in closing argument and instead holding that use is to be determined on a case-by-case basis within the sound discretion of the circuit court). *See also State v. Skakel*, 888 A.2d 985, 1068–70 (Conn. 2006) (prosecutor did not act improperly or deny defendant a fair trial in playing during closing argument excerpts from an audiotaped interview of defendant with a screen showing the transcript of the excerpts juxtaposed with photographs of the victim that had been properly admitted into evidence); *State v. Bonanno*, 373 S.2d 1284, 1292 (La. 1979) (circuit court did not err in allowing the prosecution to replay properly admitted audiotapes of defendant's statement during closing argument).

¶ 30.   We are not persuaded that the due process guarantee of a fair trial requires a rule prohibiting the State from playing during closing argument a properly admitted video statement. We agree that a video statement provides more information to the jury than a reading of a transcript of the statement. The jury not only hears the witness's words again in his or her own voice but also sees the witness again, with all the cues to credibility and meaning that demeanor conveys. This makes a video statement both a more accurate presentation of the witness's testimony than a transcript and potentially a more powerful one.

¶ 31.   However, while the potential power of playing video statements at closing argument requires caution in their use, it does not warrant a wholesale prohibition of use in this context. The court's discretion in controlling closing argument is sufficient to protect defendants against unfair uses in a particular case. The circuit court may control the length of the portions played in closing argument, both to avoid unduly long closing argument and to prevent an undue emphasis on the recorded testimony over the in-court testimony. In addition, the court may control the selection of portions of a recorded statement to avoid misrepresentation. *See Lenarchick*, 74 Wis. 2d at 458 (A circuit court may control the reading of a transcript at closing argument so it is not unduly time consuming and so that the portions selected do not give an undue emphasis.).

¶ 32.   Accordingly, we conclude the due process clause does not preclude all use during closing argument of video statements that have been properly

admitted into evidence. It follows that defense counsel did not perform deficiently by failing to object on this ground.[7]

¶ 33.   As already noted, Marinez's claim of ineffective assistance of counsel is premised on his contention that WIS. STAT. § 908.08 does not permit playing A.M.'s video statement during closing argument, and on his contention that playing a video statement during closing argument violates the due process clause as a matter of law. He does not develop a separate argument that defense counsel was deficient in not objecting to the length of the portions played or the selection of the portions or some other aspect particular to this case. Accordingly, our rejection of his statutory and constitutional arguments leads us to conclude counsel was not deficient in failing to object to the prosecutor's playing of portions of A.M.'s statement during closing argument.

II.   Jury's Request for a Read-Back

■■■■

¶ 34.   During deliberations, the jury asked to have read to it a portion of A.M.'s testimony when she was asked whether Marinez did anything to her she did not want him to do or made her do anything she did not

---

[7] Marinez points out that defense counsel testified at the *Machner* hearing that if he had to do it over again he would have objected to the State's playing A.M.'s video statement during closing argument. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). However, the proper inquiry is whether defense counsel's performance is objectively reasonable in the circumstances of the case, and counsel's testimony on his or her thinking is not dispositive. *State v. Kimbrough*, 2001 WI App 138, ¶¶ 31–35, 246 Wis. 2d 648, 630 N.W.2d 752. It is not unreasonable for defense counsel to fail to object based on legal theories that are incorrect.

want to do. Marinez contends that defense counsel was deficient in failing to ask the court to comply with the jury's request and read back the requested portion of A.M.'s in-court testimony. Marinez asserts that A.M.'s in-court testimony was more favorable than her video statement. According to Marinez, hearing A.M.'s in-court testimony again would have benefitted him more than the instruction defense counsel told the court he preferred and which the court gave: that the jury should rely on its collective memory.[8]

¶ 35. This is the portion of A.M.'s in-court testimony to which the jury's request for a read-back was apparently directed:

Q   Okay, [A.M.], when Alex lived with you, did he ever make you do anything that you didn't want to do?

A   Um, yeah.

---

[8] Apart from his ineffective assistance of counsel claims, Marinez argues that the circuit court applied the wrong legal standard in answering the jury as it did. When a jury asks a question about testimony, it has the right to have the testimony read back to it subject to the circuit court's discretion to limit the reading. *Anderson*, 291 Wis. 2d 673, ¶ 83. Marinez asserts the court's response to the jury did not inform the jury of this right but erroneously led the jury to believe it was required to reach a verdict without having A.M.'s in-court testimony read back. We do not review the court's exercise of discretion in responding to the jury because defense counsel did not object and, in fact, the court's response was consistent with the defense counsel's request. As noted earlier, see note 2, the normal procedure when a defendant has waived an objection to a claimed circuit court error is to address it in the framework of ineffective assistance of counsel. *Carprue*, 274 Wis. 2d 656, ¶ 47. This is particularly the case where, as here, the court's decision was within its discretion, and, had the defendant stated he wanted a read back, the court might have taken a different approach.

Q   Okay. What, what did he make you do?

A   It's hard to remember.

Q   It's okay. Take your time and think.

A   (No response.)

. . . .

Q   . . . Now, I asked you a question before if Alex ever made you do anything that you didn't want to do. Do you remember that question?

A   Um-hum.

Q   Okay. Did he ever make you do anything that you didn't want to do?

A   No, not really.

Q   Okay. There was never anything that he did to you that you didn't want him to?

A   A little.

Q   Okay. A little?

A   Um-hum.

Q   What do you mean, a little?

A   I don't really know.

Q   Okay. Can you think hard for us?

A   I don't know.

Q   But he did something that you didn't want him to do a little?

A   Um-hum.

302

Q   Can you think real hard and tell us what that was?

A   I don't know.

¶ 36.   At the *Machner* hearing defense counsel testified that he viewed the answers to the questions the jury was referring to as implying that Marinez did something to A.M. He was aware that at the end of her testimony there were two questions, asked by jurors (through the court), that A.M. answered favorably to Marinez. These were:

Q   . . . have you ever seen Alex's, your Uncle Alex's, private parts?

A   No.

Q   . . . did your Uncle Alex touch you with his private part?

A   No.

As defense counsel testified, he had highlighted A.M.'s answers to these last two questions in his closing argument. However, in response to the jury's request during deliberations, he testified, he thought it would be best to have the jury rely on their collective memory because of the inculpatory portions of A.M.'s in-court testimony.

¶ 37.   We conclude defense counsel made a reasonable strategic decision in asking the court to instruct the jury to rely on its collective memory. The specific questions the jury referenced had, overall, answers that were inculpatory to Marinez. Defense counsel could reasonably decide that the jury's request meant it wasn't sure how A.M. had answered these questions and could decide it would be to Marinez's disadvantage

303

to have the answers read. In addition, there were answers to other questions that indicated Marinez made her do something scary to her in her bedroom that involved him undoing his zipper. Defense counsel could reasonably decide that, even if the court would allow A.M.'s entire testimony to be read, which would include the last two favorable answers, that would not outweigh the disadvantage of hearing the unfavorable answers. Thus, it was a reasonable strategy to propose that the court instruct the jury to rely on its collective memory.[9]

## CONCLUSION

¶ 38. Defense counsel did not perform deficiently either by failing to object to the prosecutor playing portions of A.M.'s video statement during closing argument or by failing to request that her in-court testimony be read back in response to the jury's question during deliberation. Accordingly, we reject Marinez's claims of ineffective assistance of counsel and we affirm the judgment of conviction and the order denying his motion for a new trial.

*By the Court.*—Judgment and order affirmed.

---

[9] Defense counsel acknowledged at the *Machner* hearing that in hindsight it might have been better for Marinez to have all of A.M.'s testimony read back. However, we evaluate what the defense counsel actually did, not what he might have done in hindsight, and we apply an objective standard. *See* footnote 7.