Darnell JACKSON, Petitioner-Appellant-Petitioner,

v.

Daniel BUCHLER and Matthew Frank,
Respondents-Respondents.

*No. 2006AP948. Oral argument September 15, 2010.
—Decided December 14, 2010.*

Supreme Court

2010 WI 135

(Also reported in 793 N.W.2d 826.)

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Darnell Jackson, seeks review of an unpublished deci-

sion of the court of appeals affirming an order denying his petition for a writ of certiorari.[1] In a prison disciplinary proceeding, Jackson was found guilty of inciting a riot. He contends that the proceeding violated procedural due process.

¶ 2. Video evidence is the focus of Jackson's initial due process arguments. He asserts that the video footage undermines or contradicts the other evidence considered by the adjustment committee, rendering the evidence of his guilt constitutionally insufficient. Additionally, he contends that the video footage is exculpatory or impeaching evidence, which should have been disclosed to him under *Brady v. Maryland,* 373 U.S. 83 (1963).

¶ 3. We determine that the video footage is inconclusive and neither undermines nor contradicts the evidence considered by the adjustment committee. We further conclude that with or without the video footage, there was sufficient evidence of Jackson's guilt. Under the facts presented by this case, we need not and do not determine whether any version of *Brady*—limited or otherwise—applies to prison disciplinary proceedings.

¶ 4. Additionally, Jackson asserts that his due process right to an impartial decisionmaker was violated because a member of his adjustment committee also had "substantial involvement" in the incident because she participated in the investigative process. Based on this record, we cannot conclude as a matter of law that the committee member's involvement in the incident was "substantial."

¶ 5. Accordingly, we affirm the court of appeals.

---

[1] *See Jackson v. Buchler,* No. 2006AP948, unpublished slip op. (Wis. Ct. App., Dec. 13, 2007), affirming an order of the circuit court for Dane County, Maryann Sumi, J.

283

## I

¶ 6. At approximately 1:40 p.m. on November 11, 2004, several New Lisbon Correctional Institution security guards were attacked and injured by three inmates: Jamie Vest, Bernard Treadwell, and Alvin Kenney. The attack occurred at the A Unit officers' station, which is located between the A Unit Side 1 and Side 2 dayrooms. According to the subsequent investigation, many inmates participated in the assaults by purposefully rushing toward the officers' station and positioning themselves to participate in the riot.

¶ 7. Although the attack itself appears not to have been recorded by security cameras, video footage of the Side 1 and Side 2 dayrooms was used in the investigation. Many inmates were disciplined as a result of their participation in the riot.

¶ 8. At the time of the riot, Darnell Jackson was working in the prison barbershop, which abuts the Side 1 dayroom. There is no evidence or allegation that Jackson directly participated in the riot.

¶ 9. Nevertheless, staff investigators uncovered information implicating Jackson as a leader responsible for inciting the attack. Two inmates who requested confidentiality stated that they had direct personal knowledge of the circumstances which led to the riot. Both stated that Jackson, who used the alias "Wiz," acted in a leadership position in a gang called the Vice Lords. Both indicated that prior to the riot, Jackson met with the inmates and instructed them to assault the guards.[2]

---

[2] At least two other inmates gave statements that appeared to implicate Jackson. One inmate stated that Jackson came out of the barbershop where Vest, Treadwell, and Kenney were

¶ 10. A conduct report was issued, which cited Jackson for inciting a riot[3] and for group resistance.[4] The conduct report noted: "Tapes from the NLCI A Unit and NLCI exterior cameras from 11/11/04 have been utilized by the investigators of the 11/11/04 riot."

¶ 11. As set forth in the conduct report, the informant referred to as CI#1 stated in part:

> Darnell Jackson is calling it for the Vice Lords and P-Stones. I saw inmate[s] putting their boots and gloves on and I knew something was going to happen. Vest, Treadwell, Darnell Jackson and Alvin Kenney were all huddled up first in the hallway. All the people who assaulted the staff are V.L. and P-Stones (Rangers). I also saw Lipsey and Ward outside in the hallway talking to "Wiz" (AKA Darnell Jackson.) I saw Wiz in the hallway, everybody had on boots and gloves.

The informant referred to as CI#2 stated in part:

> Lipsey (Samuel) was on crutches and came back to the unit from HSU. Lipsey stated to the inmates on the unit that he saw Love being attacked and the guards had him on the ground and were beating him. Treadwell and Vest then went to Whiz (who is first in command) and told him about Love. Whiz was behind the incident. He stated to them, "You guys know what you have to do."

---

located, and then returned to the barbershop prior to the assault. Another inmate stated that Jackson was "a five star general for the Vice Lords."

[3] Wisconsin Admin. Code DOC § 303.18 provides: "Any inmate who encourages, directs, commands, coerces or signals one or more other persons to participate in a riot is guilty of an offense. 'Riot' means a disturbance to institutional order caused by a group of 2 or more inmates which creates a risk of injury to persons or property."

[4] *See* Wis. Admin. Code DOC §§ 303.20, 303.03(4).

¶ 12. The conduct report concluded that "Jackson is in a leadership position with the Vice Lords, called for the assault to happen, and was talking to the three inmates who assaulted staff seconds before the assault took place." Further, it stated that the confidential informants "are believed to be credible as their statements were obtained separately. Neither inmate had knowledge of the other's statement." It determined that "[t]he statements were consistent with and corroborated one another."

¶ 13. Jackson was provided with a copy of the conduct report and a notice of his right to a hearing. He submitted an affidavit, which asserted that at no time did he talk with Treadwell, Vest, or Kenney, and that he had nothing to do with the attack. He further contended that he is no longer a member of the Vice Lords, that he was never a member of the P-Stones, and that he never acted in a leadership position with those gangs.

¶ 14. According to his affidavit, on the afternoon of the riot Jackson was in the prison barbershop cutting Inmate Piel's hair. He heard a loud commotion and saw inmates gathered around the TV monitor. Jackson contended that he left the shop for 15 seconds to look at the TV monitor, but he could not see what was happening and returned to the shop. After he finished cutting Piel's hair, Jackson left the shop. At that time, there was a commotion at the sergeant's desk, and he saw Treadwell, Vest, and Kenney swinging their fists and kicking someone. He proceeded towards his cell.

¶ 15. The Security Office granted Jackson's request to present the testimony of two inmates, Larry Piel and Bernard Treadwell. It denied Jackson's request to present the testimony of two additional inmates, Samuel Lipsey and Jamie Vest, and one Department of Corrections (DOC) officer, Captain Harrel. The office

286

explained that Jackson did not provide good cause to demonstrate that the additional witnesses could provide essential testimony.[5]

¶ 16. Jackson, Piel, and Treadwell testified at the hearing. The two confidential informants did not testify.

¶ 17. The adjustment committee found Jackson guilty of inciting a riot and not guilty of group resistance. As a result of this disposition, Jackson's release date was extended by 179 days.

¶ 18. Lieutenant Pamela Zank completed form DOC-84, entitled "Disciplinary Hearing: Reasons for Decision and Evidence Relied on," (hereinafter, "Hearing Decision"). As provided in the Hearing Decision, the committee found it "more likely than not inmate Jackson committed the act of inciting a riot." The Hearing Decision explained that the committee "evaluated all the evidence, confidential statements and testimony and reached its conclusion that the statements in the conduct report are correct." It concluded that Jackson's testimony was "less credible" and that "inmate witness testimony [was] not credible."

¶ 19. The Hearing Decision form contained a section for the adjustment committee to set forth the physical evidence it relied upon in reaching its decision.

---

[5] Wisconsin Admin. Code DOC § 303.81(1) provides in part: "The accused may directly or through an advocate make a request to the security office for witnesses to appear at the major violation hearing . . . . Except for good cause, an inmate may present no more than 2 witnesses in addition to the reporting staff member or members."

During his administrative appeals, Jackson asserted that the denial of his request to call these witnesses was a due process violation. However, he has not renewed this argument in the circuit court, the court of appeals, or this court.

That section provided that among other evidence,[6] the committee relied on "video" evidence in finding Jackson guilty.

¶ 20. Jackson timely appealed to Warden Buchler.[7] Among other claims, Jackson contended that Lt. Zank's participation in the hearing violated DOC rules and his due process right to a fair and impartial hearing, and that there was insufficient evidence to establish his guilt. He asserted that Lt. Zank was among the officers who investigated the assault, that she had interviewed Jackson about the incident, and that she asked Jackson to sign a waiver of his hearing rights. Jackson made no claim regarding video evidence.

¶ 21. Warden Buchler affirmed the committee's decision, concluding that there was sufficient evidence to sustain its determination of guilt. He also found that "Lt. Zank did not have substantial involvement in the incident to warrant not being on the hearing committee."

¶ 22. Following the inmate complaint procedures outlined in Wis. Admin. Code Ch. DOC 310, Jackson filed two offender complaints with the institutional complaint examiner. His first complaint raised issues related to the statements of the confidential informants. That complaint was dismissed. His second complaint asserted that the committee violated Wis. Admin. Code DOC § 303.82(2)[8] by permitting Lt. Zank to participate as a member of the adjustment committee. The institutional

---

[6] The other evidence listed in the Hearing Decision includes: statement in the conduct report, other testimony, confidential witness statements, C-120, diagram, and gang coordinator credentials.

[7] *See* Wis. Admin. Code DOC § 303.76(7).

[8] Wisconsin Admin. Code DOC § 303.82(2) provides: "No person who has substantial involvement in an incident, which is the subject of a hearing, may serve on the committee for that

288

complaint examiner recommended that the complaint be dismissed, concluding that "Lt. Zank did not have substantial involvement in the investigative process." On review, the corrections complaint examiner found "no procedural error of consequence" and also recommended that the complaint be dismissed. Ultimately, the Secretary of the DOC accepted the recommendation and dismissed Jackson's complaint.

¶ 23. Jackson filed a petition for a writ of certiorari in the circuit court pursuant to Wis. Stat. § 801.02(5).[9] The petition advanced four arguments for consideration: (1) the adjustment committee improperly relied on the confidential informants' statements; (2) Lt. Zank's participation on the committee denied Jackson a fair tribunal; (3) the committee gave inadequate reasons in support of its determination of guilt; and (4) certain evidence, including the video evidence, should have been but was never disclosed.

¶ 24. Jackson's petition for certiorari triggered the respondents' obligation to transmit the record to the circuit court. Prior to transmitting the record, Warden Buchler reviewed the conduct report and the record once more.[10] He remanded the Hearing Decision to the adjustment committee and instructed the committee to remove from its decision the reference to a video:

> I can find no substantiation that there was a video showing Mr. Jackson's involvement in this incident.

---

hearing. Committee members shall determine the subject matter of the hearing in advance in order to allow replacement of committee members if necessary and thereby avoid the necessity of postponing the hearing."

[9] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[10] *See* Wis. Admin. Code DOC § 303.76(7)(e).

289

However, for the reasons I indicated on the initial appeal form . . . , I find no reason to alter the decisions and disposition of the disciplinary hearing[.] Therefore, I am remanding this back to the original hearing committee *only* for a correction of the record on form DOC-84 regarding physical evidence used for this hearing.

¶ 25. As a result of the warden's correction, the record that was provided to the circuit court contained an amended Hearing Decision in which the word "video" was crossed out. No video was included in the agency's record.

¶ 26. Jackson filed a motion to strike the return.[11] Among other claims, he asserted that "[t]he video tape which was used against the petitioner as physical evidence was not in the return and was illegally removed from the record," and that by removing this evidence from the record, the respondents were attempting to evade judicial review. In his written brief to the circuit court, Jackson explained that video footage of the incident "ostensibly would have shown Jackson did not exit the Barber Shop and purportedly converse and/or signal participants in the disturbance."

¶ 27. The respondents disputed Jackson's claim that the warden had removed video evidence from the

---

[11] When an agency transmits its record to a circuit court for certiorari review, the agency's record is sometimes referred to as the "return."

In addition to his motion to strike the return, Jackson filed a motion to compel the production of certain evidence, a motion to stay the proceedings until the court decided the merits of the motion to strike, and a motion challenging the sufficiency of evidence submitted for in camera review. In its final decision on the merits of the petition, the circuit court denied all of Jackson's motions.

record. Rather, they contended that "[t]he adjustment committee in the instant case erroneously included a reference to a videotape in the evidence relied on section of the [Hearing Decision]."[12] The respondents further asserted that even if such a tape existed, Jackson would have no right to its production.

¶ 28. In a written decision, the circuit court affirmed. It conducted an in-camera review of the confidential informants' statements and determined that they satisfied the requirements for admissibility of confidential statements found in Wis. Admin. Code DOC § 303.86.[13] The court concluded that substantial evidence supported the committee's decision and that based on the confidential informants' statements, the committee could reasonably conclude that Jackson encouraged and directed the inmates to assault staff.

¶ 29. Turning to the claims based on video evidence, the circuit court stated that Jackson failed to exhaust the administrative remedies provided by the DOC. Nevertheless, the court interpreted the warden's August 29 letter as "reflect[ing] the fact that no video was actually reviewed during the disciplinary process."

[12] To explain this alleged mistake, the brief asserted that the November 11 assault "resulted in disciplinary proceedings against numerous inmates," many of whom were directly involved in the assault and were depicted in video footage of the event.

[13] Wisconsin Admin. Code DOC § 303.86(4) provides: "If the institution finds that testifying would pose a risk of harm to the witness, the committee may consider a corroborated, signed statement under oath from that witness without revealing the witness's identity . . . . The adjustment committee shall reveal the statement to the accused inmate, though the adjustment committee may edit the statement to avoid revealing the identity of the witness. . . . Two anonymous statements by different persons may be used to corroborate each other."

Because the adjustment committee found the evidence sufficient without any video evidence, the circuit court determined that Jackson's arguments about the video were moot. Further, the "mistaken reference to video footage" in the Hearing Decision was harmless error because "the committee does not discuss video evidence anywhere in its reasons for decision."

¶ 30. Finally, the circuit court concluded that Lt. Zank's participation in the adjustment committee was proper. It cited Wis. Admin. Code DOC § 303.82(2), which provides that "[n]o person who has substantial involvement in an incident, which is the subject of a hearing, may serve on the committee for that hearing." The court concluded that the type of "involvement" contemplated by the code provision is involvement in "the riot itself, not the investigation that followed."

¶ 31. In an unpublished decision, the court of appeals affirmed the circuit court. *Jackson v. Buchler,* No. 2006AP948, unpublished slip op. (Wis. Ct. App., Dec. 13, 2007). It agreed with the circuit court that the confidential informants' statements were admissible, that they corroborated each other, and that they provided sufficient evidence to sustain the committee's finding of guilt. *Id.,* ¶¶ 11–13.

¶ 32. With regard to Jackson's arguments about video evidence, the court of appeals asserted that "Jackson has not provided us with any rule or case law that gives him a right to exculpatory evidence." *Id.,* ¶ 14. It concluded that an inmate's right to present physical evidence does not establish that the inmate is entitled to obtain evidence from prison officials. *Id.*

¶ 33. Finally, the court of appeals concluded that Wis. Admin. Code DOC § 303.82(2), which bars a person with "substantial involvement" in an incident from sitting on the adjustment committee, was ambiguous.

The term "involvement" could be limited to involvement in the events giving rise to the disciplinary charge, or it could also include involvement in the investigation of the incident. *Id.*, ¶ 5. Nevertheless, the court of appeals declined to interpret the code provision because Jackson made no argument that Lt. Zank's participation in the investigation was "substantial." *Id.*, ¶ 10. Jackson petitioned this court for review.[14]

¶ 34. At the first oral argument, Jackson persuasively argued that video footage depicting the hallway outside the barbershop could provide extremely relevant evidence. He advanced that the confidential informants' statements would be seriously undermined if video footage depicting the hallway outside the barbershop existed and Jackson was not shown huddling with the assailants. The respondents countered that "[t]here is nothing in the record to indicate whether any videotapes exist that might support Jackson's assertion of innocence."

¶ 35. A majority of this court was troubled by the state of the record. In an order issued after the oral argument, we explained: "Because a video that was once in the record is no longer in the record, this court is being asked to decide the legal issues presented to us without access to the evidence." *Jackson v. Buchler,* No. 2006AP948, unpublished order (Wis. S. Ct., Feb. 2, 2010).

¶ 36. We concluded that "the present record is insufficient for us to determine whether the petitioner's rights have been violated[] under any legal theory." *Id.* Therefore, we retained jurisdiction of the appeal, but

---

[14] When we accepted Jackson's petition, we directed the parties to address additional questions related to exhaustion of administrative remedies and the applicability of *Brady v. Maryland,* 373 U.S. 83 (1963), to prison disciplinary proceedings.

remanded for the circuit court to "receive the video in question and perform an in camera review of the video to determine whether it is exculpatory and material." *Id.*

¶ 37. On remand, the circuit court received four video clips from the DOC, which have now been added to the record. The circuit court concluded that this evidence was neither material nor exculpatory:

> [A]fter having watched the video with counsel, I now determine that it is neither exculpatory nor material for Darnell Jackson's claim. This is because it does not either support or refute Darnell Jackson's claim that he never left the barbershop. The video itself does not continuously or even sporadically show the barbershop door. I think that means that it is simply not exculpatory.

We directed the parties to file simultaneous briefs about the effect of the circuit court's oral decision on the case, and we scheduled the matter for a second oral argument.[15]

## II

¶ 38. On certiorari, a court's review of an agency decision is limited to four basic inquiries: (1) whether the

---

[15] Prior to the argument, Jackson filed a motion seeking permission to play a two-minute portion of the video footage during oral argument. We granted the motion and directed the parties to file a stipulation of fact, describing in relevant detail the events depicted.

The parties' joint stipulation set forth the following facts: The video footage depicts Side 1 of the A Unit of the New Lisbon Correctional Institution. The door to the barbershop is not shown continuously throughout the video segment. Jackson is not depicted at any time during the video segment.

Further description of the individuals and events depicted in the video clip is set forth below in the analysis.

agency kept within its jurisdiction; (2) whether it acted according to law; (3) whether its actions were arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence presented was such that the agency might reasonably make the determination it did. *State ex. rel Staples v. DHSS*, 115 Wis. 2d 363, 370, 340 N.W.2d 194 (1983). As part of this inquiry, the court may consider whether the petitioner was denied due process of law. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 628-299, 579 N.W.2d 698 (1998).

¶ 39.　In the present case, our inquiry is focused on whether the procedures employed by the adjustment committee satisfied due process. When evaluating the weight of the evidence on certiorari review, a court will affirm the agency's view of the evidence if "reasonable minds could arrive at the same conclusion" reached by the agency. *State ex rel. Palleon v. Musolf*, 120 Wis. 2d 545, 549, 356 N.W.2d 487 (1984). Whether the agency's disciplinary procedures satisfied due process is a question of law, which we review independently of the determinations rendered by the agency, the circuit court, and the court of appeals. *Warren,* 219 Wis. 2d at 629.

### III

¶ 40.　Jackson advances three due process arguments. Two relate to video evidence, and the third relates to the impartiality of the adjustment committee. Before addressing the merits of Jackson's due process claims, we address the threshold question of whether this court lacks authority to decide Jackson's claims related to video evidence under the doctrine of exhaustion of remedies.

¶ 41. Wisconsin Stat. § 801.02(7)(b) provides: "No prisoner may commence a civil action or special proceeding, including a petition for a common law writ of certiorari, with respect to the prison or jail conditions in the facility in which he or she is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections has promulgated[.]" If an inmate wishes to challenge the procedures used by an adjustment committee in a prison disciplinary action, he or she must follow the procedure outlined in Wis. Admin. Code Ch. DOC. We have interpreted § 801.02(7)(b) to require exhaustion of constitutional challenges even when raising the challenge in an administrative proceeding would be futile. *State ex rel. Hensley v. Endicott*, 2001 WI 105, ¶ 9, 245 Wis. 2d 607, 629 N.W.2d 686.

¶ 42. In this case, there is no dispute that Jackson commenced an "action"—here a common law writ of certiorari—that is properly before the court.[16] Rather, the parties dispute whether Jackson, now properly before the court, is entitled to raise specific claims that were not raised in the administrative proceedings and were first argued in the circuit court.

---

[16] The inmate must appeal to the warden under Wis. Admin. Code DOC § 303.76, and if unsuccessful, must then file an inmate complaint following the procedures outlined in Wis. Admin. Code Ch. DOC 310. *State ex rel. L'Minggio v. Gamble*, 2003 WI 82, ¶ 12, 263 Wis. 2d 55, 667 N.W.2d 1. Here, Jackson appealed the decision to the warden, filed a complaint with the inmate complaint examiner, sought review from the corrections complaint examiner, and ultimately received a decision from the Secretary of the DOC.

¶ 43. This inquiry is complicated by the unusual facts of this case, as well as ambiguities in the agency record. On certiorari, a court reviews the record of the agency. In this case, however, prior to transmitting the record to the circuit court, the warden remanded the case to the original hearing committee for "a correction of the record." He asserted: "I can find no substantiation that there was a video showing Mr. Jackson's involvement in this incident."

¶ 44. The warden's explanation for requesting the change in the record leaves unanswered questions. There is an inherent contradiction between the Hearing Decision (which listed "video" among the evidence the committee relied upon in determining guilt) and the warden's statement (which acknowledged that no video evidence supported Jackson's guilt).[17]

■

¶ 45. Inmates and courts alike expect that "some form of comprehensible and adequate record should be kept and provided for purposes of review." *State v. Goulette,* 65 Wis. 2d 207, 216, 222 N.W.2d 622 (1974). "[T]he provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the

---

[17] Based on this conflict, at least two inferences are possible. One could infer that the committee reviewed video footage and determined that it supported Jackson's guilt—but that the warden subsequently concluded that the video footage did not actually support guilt and unilaterally removed evidence considered by the committee from the record. Alternately, one could infer that the committee did not view any video evidence at all in conjunction with Jackson's hearing—but that it erroneously reported on the Hearing Decision that a "video" provided physical evidence of Jackson's guilt.

courts, . . . will act fairly." *Wolff v. McDonnell,* 418 U.S. 539, 565 (1974). Jackson presented a persuasive argument that the record from the adjustment committee hearing was incomplete, and we remanded so that the record could be supplemented.[18]

¶ 46. This case has been pending in this court for nearly two years (at least in part due to uncertainty about the adequacy of the agency's record), we have held two oral arguments, and upon an interlocutory remand to the circuit court the record has now been supplemented with what appears to be the missing video evidence. Given these unusual circumstances, we conclude that both parties are better served by a final resolution of their dispute than they would be by a robust discussion of the exhaustion requirement and the possibility of a remand. Accordingly, we turn instead to address the merits of the related claims.

IV

██

¶ 47. The United States Supreme Court has explained that the basic guarantees of procedural due process apply in prison disciplinary proceedings. In *Wolff,* the Court proclaimed: "There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–56. The proposition that "prisoners in state institutions are wholly without the protections of the Constitution and the Due Process Clause . . . is plainly untenable." *Id.* at 555.

---

[18] During the oral argument, the court asked counsel for the respondents: "You are not going to suggest that this is an ideal record made by the disciplinary committee, the Department of Corrections, or the warden?" Counsel responded: "It is far from ideal."

¶ 48. Nevertheless, prison disciplinary proceedings are not equivalent to criminal trials, and an inmate's due process rights are "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* at 556. In this setting, an inmate is not given the "full panoply of rights due a defendant" in a criminal trial. *Id.*

¶ 49. In this case, there is no dispute that Jackson's procedural due process rights are implicated. The disciplinary committee's disposition had the effect of extending his mandatory release date. The question is whether the procedures of the committee satisfied due process.

¶ 50. The *Wolff* Court set forth three hallmarks of due process that must be satisfied in prison disciplinary actions: (1) a written notice of the claimed violation; (2) a written statement of the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence. *Id.* at 563–66. Jackson's arguments relate to his disciplinary hearing and thus emanate from the third hallmark of due process.

¶ 51. Although there is no dispute that Jackson had a hearing, he challenges the procedures employed by the committee during the hearing. As with any procedural due process inquiry, the touchstone of our analysis is whether the procedures used by the committee were fundamentally fair. *See D.M.D. v. State,* 54 Wis. 2d 313, 318, 195 N.W.2d 594 (1972); *State v. Marinez,* 2010 WI App 34, ¶ 21, 324 Wis. 2d 282, 781 N.W.2d 511.

¶ 52. In Part V, we address Jackson's claims that relate to video evidence. In Part VI, we address his claim regarding the impartiality of the committee.

V

¶ 53. Jackson makes two separate claims regarding the video evidence that is now a part of the appellate record. He argues that, considering all the evidence in light of what is portrayed on the video footage, there was insufficient evidence to find him guilty of inciting a riot. He also argues that the committee had an obligation to produce the evidence under *Brady v. Maryland,* 373 U.S. 83 (1963).

¶ 54. Although Jackson's claims are grounded in two distinct legal theories, both are based on his assertion that video evidence contradicts or undermines the confidential informants' testimony. We begin by addressing Jackson's sufficiency of the evidence claim.[19]

---

[19] Although the dissent asserts that a review of the sufficiency of the evidence is not the proper analysis for our certiorari review, dissent, ¶ 93, it is the very analysis that Jackson himself raised and advanced in this court after the record was supplemented with the video evidence on remand. *See* Post-Remand Memorandum of Petitioner Darnell Jackson at 9 ("[T]he video evidence's objective proof that Jackson did not meet with the rioters in the hall immediately before the riot renders the evidence on which the adjustment committee relied legally insufficient.").

The dissent relies in part on due process arguments that Jackson advanced prior to the remand. For example, Jackson initially argued that "[t]he DOC's failure to produce the video as part of the record on certiorari review—*or at any time*—precluded a fair review by the lower courts and violated Jackson's due process rights." Reply Brief of Petitioner Darnell Jackson at 3 (emphasis added).

¶ 55. Jackson argues first that there was insufficient evidence to support the adjustment committee's determination that, more likely than not, he incited the riot.[20] *See Santiago v. Ware*, 205 Wis. 2d 295, 337, 556 N.W.2d 356 (Ct. App., 1996). The question is "whether reasonable minds could arrive at the same conclusion reached by" the adjustment committee. *State ex rel. Richards v. Traut*, 145 Wis. 2d 677, 680, 429 N.W.2d 81 (Ct. App. 1988).

¶ 56. The primary evidence linking Jackson to the riot were the statements of two confidential informants, CI#1 and CI#2. Jackson acknowledges that

This case has evolved now that the record has been supplemented with the video evidence on remand. Post-remand, Jackson has not renewed any argument that a deficiency in the record precludes fair review. Rather, in his post-remand memorandum to the court, Jackson argues: "*[N]ow that the DOC has finally produced the video,* the parties can meaningfully discuss why that evidence fatally undermines the basis for the disciplinary ruling[.]" Post-Remand Memorandum of Petitioner Darnell Jackson at 3–4. He set forth the remaining three issues: (1) sufficiency of evidence; (2) whether *Brady* applies and if so, the standard that should be applied; and (3) Lieutenant Zank's participation on the committee. *Id.* These are the issues we address in this opinion.

[20] In a prison disciplinary proceeding, the adjustment committee must find it "more likely than not" that the accused committed the violation. Wis. Admin. Code DOC § 303.76(6)(b). Thus, the DOC's burden is lower than a prosecutor's burden in a criminal trial. Further, an adjustment committee may consider "any relevant evidence, whether or not it would be admissible in a court of law." Wis. Admin. Code DOC § 303.86(2)(a).

these statements were admissible under DOC rules.[21] He also acknowledges that without more, the statements would be sufficient evidence of guilt to satisfy due process.[22]

¶ 57. We agree. If believed, the confidential informants' accounts establish that Jackson was "huddled up" in the hallway talking with Treadwell, Vest, and Kenney shortly before those inmates attacked the guards. Further, if believed, they establish that Jackson told the other inmates: "You guys know what you have to do." Under the circumstances, reasonable minds could interpret Jackson's alleged statement as an instruction to attack the guards. Reasonable minds could conclude that the confidential informants' statements, along with other facts set forth in the conduct report, established that it was more likely than not that Jackson incited the riot.

¶ 58. Nevertheless, Jackson asserts that the video evidence contradicts the informants' statements, rendering them not credible. In light of the video evidence, Jackson contends that there was insufficient evidence to sustain the committee's determination.

¶ 59. During oral argument, the court viewed a portion of the video footage, which Jackson identifies as the crux of his argument.[23] This two-minute clip depicts

---

[21] Although Jackson raised questions about the admissibility of the confidential informants' statements in the circuit court and in the court of appeals, he does not renew those arguments here.

[22] At oral argument, his counsel conceded: "The evidence of the two confidential informants alone . . . , while extremely weak, would under the case law, again, if there was no other evidence, would be sufficient."

[23] Although we directed the parties to describe in relevant detail the events depicted in the two-minute clip, the parties'

Side 1 of New Lisbon's A Unit on the day of the riot. Jackson asserts that the clip begins approximately one minute before the guards were attacked and two minutes before additional guards responded to the riot.

¶ 60. Throughout the duration of the clip, the camera sporadically pans around the Side 1 dayroom. The door of the barbershop, which abuts the dayroom, is sometimes but not always visible in the shot.

¶ 61. According to Jackson's representations to the court, at approximately 49 seconds into the clip, the camera pans to a static shot depicting Vest, Treadwell, Kenney, and other unnamed inmates. Jackson is not present. The inmates are gathered in a loose cluster not far from the barbershop door. At the time that the inmates are first depicted, they are walking in the direction of the guard station. The camera remains on the inmates for a total of three seconds before panning away.

¶ 62. During the following 78 seconds, the footage intermittently depicts the barbershop door, which remains closed. Several guards emerge from behind the guard station. Shortly thereafter, the guards sprint off camera toward Side 2 of the A-Unit. Jackson infers that at that point, the guards are responding to the riot.

stipulation lacks sufficient detail for us to evaluate Jackson's claim that the video evidence undermines the confidential informants' statements. During oral argument, both parties went beyond the stipulated facts. Although they appear to largely agree on the identities of individuals and events that are depicted in the clip, they argue about what inferences should be drawn from these facts.

Our discussion here relies on Jackson's representations about the individuals and events depicted. Accordingly, we evaluate the video evidence in the light most favorable to his claim.

303

¶ 63. Jackson maintains that the video evidence described above "fatally undermines the testimony of the two confidential informants who stated that Jackson left the barbershop and met with rioting inmates to tell them to start the riot." We do not reach the same conclusion.

¶ 64. The two-minute segment of video footage neither affirms nor disproves the confidential informants' assertion that Jackson met with the assailants shortly before the attack. It does not provide a consistent shot of the barbershop door or the hallway outside the barbershop where the meeting allegedly took place. Likewise, it provides no more than three seconds of footage depicting the assailants' actions immediately prior to the riot.

¶ 65. Rather, by the time the camera first pans to the assailants, they have already assembled as a group and are already advancing toward the guard station. From the footage, it is impossible to determine how long the assailants had been congregating near the barbershop door. Likewise, it is impossible to determine whether any other inmates, including Jackson, were present before the assailants were first depicted. Certainly, it is conceivable that Jackson met with the inmates, "called" the riot, and returned to the barbershop in the seconds or minutes before the security camera panned to the assailants.

¶ 66. Jackson concedes that the alleged meeting with the assailants could have taken place prior to the events depicted in the video. Yet, he contends, a meeting that occurred but was not captured on tape would be inconsistent with the conduct report's assertion that Jackson met with the assailants "seconds before" the riot occurred.[24]

---

[24] *See supra,* ¶ 12. At oral argument, the following exchange occurred between counsel for Jackson and the court:

¶ 67. Jackson's contention is not supported by the events actually portrayed in the video clip. Rather than contradicting the informants' statements, reasonable minds could conclude that the video clip and the informants' statements are consistent. The video shows that Treadwell, Vest, and Kenney did in fact assemble outside the barbershop shortly before attacking the guards. To that end, the clip may actually corroborate one aspect of the confidential informants' account.

¶ 68. For the reasons set forth above, we determine that the video evidence is inconclusive and neither undermines nor contradicts the informants' statements. With or without the video evidence, reasonable minds could arrive at the same conclusion reached by the adjustment committee. Accordingly, we conclude that the evidence of Jackson's guilt was sufficient to satisfy due process.

B

¶ 69. Having concluded that the video evidence neither undermines nor contradicts the confidential informants' statements—and that it may in fact corroborate them—we turn next to briefly address Jackson's argument regarding exculpatory evidence. *Brady v. Maryland* and its progeny provide that the government may not withhold exculpatory or impeach-

Court: Is it possible that Mr. Jackson could have been walking with them or huddled with [the assailants] before the tape starts or at some time when the camera is not on that group?

Counsel: It is possible that he could have been in the hallway before the tape started, but that would not be "seconds before" [the riot began].

305

ing evidence from a defendant in a criminal trial.[25] Jackson asserts that the government's obligation to disclose exculpatory or impeaching evidence also applies in the context of a prison disciplinary proceeding, and that the adjustment committee was obligated to produce this video evidence.

¶ 70. The respondents counter that there is no controlling law applying *Brady*'s requirements to prison disciplinary proceedings.[26] If this court were to recognize a *Brady*-like claim in this context, however, the respondents urge us to conclude that its application must be limited by the "needs and exigencies of the institutional environment." *See Wolff,* 418 U.S. at 555.

¶ 71. In the sufficiency of evidence section set forth above, we determined that the video evidence is inconclusive. It is that same determination that leads us to conclude that we need not and should not decide in this case whether any version of *Brady*—limited or otherwise—applies in the prison disciplinary setting.

¶ 72. Here, we conclude that the adjustment committee's failure to provide the video footage to Jackson did not violate his due process right to a fundamentally fair hearing. The video footage adds nothing of evidentiary value for either party.[27]

---

[25] *Brady v. Maryland,* 373 U.S. 83 (1963); *Strickler v. Greene,* 527 U.S. 263 (1999).

[26] The United States Supreme Court has not addressed this question. The Seventh Circuit Court of Appeals has concluded that inmates have a qualified right to the disclosure of exculpatory evidence. *See Piggie v. McBride,* 277 F. 3d 922 (7th Cir. 2002). We are not bound by the Seventh Circuit's interpretation of the United States Constitution.

[27] We are cognizant that a *Brady* claim is not coextensive with a sufficiency of the evidence claim. Under some circumstances, a criminal defendant may have a valid *Brady* claim

¶ 73. Finally, we turn to Jackson's claim that the adjustment committee was not impartial. Jackson contends that a member of the committee, Lt. Zank, also participated in the investigation in violation of Wis. Admin. Code DOC § 303.82(2) and due process.

¶ 74. Inmates are entitled to an impartial adjustment committee in disciplinary hearings to prevent "such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Wolff,* 418 U.S. at 571. The DOC has promulgated a rule that attempts to codify this right. Wisconsin Admin. Code DOC § 303.82(2) provides: "No person who has substantial involvement in an incident, which is the subject of a hearing, may serve on the committee for that hearing."

¶ 75. The parties dispute the interpretation of the DOC rule. The respondents argue that the rule applies only when the committee member has had substantial involvement in the underlying events upon which the conduct report was based—here, the riot. Jackson contends that the rule also applies when the committee member has had substantial involvement in the investigation of those events. We need not resolve this question here. Under either interpretation, the question is whether the committee member's prior involvement was "substantial."

---

even if there would still be sufficient evidence to affirm his conviction. *Strickler v. Greene,* 527 U.S. 263, 290 (1999). Under the facts presented by this case, we need not and do not determine whether any version of *Brady*—limited or otherwise—applies to prison disciplinary proceedings.

¶ 76. The record does not reveal that Jackson objected to Lt. Zank's participation in the adjustment committee at the time of the hearing. As a result, the adjustment committee did not make any findings of fact regarding the extent of Lt. Zank's involvement.[28]

¶ 77. Without any findings of fact, we are left with only Jackson's allegations. Jackson alleges that Lt. Zank interviewed him after the riot, and that during the interview, Lt. Zank asked him to waive his hearing rights.

¶ 78. Perhaps because the record on this subject is so sparse, both parties attempt to supplement it. At oral argument, the respondents asserted that Lt. Zank met with Jackson for the purpose of delivering a copy of the conduct report. Yet, that assertion is not supported by the documentary evidence in the record. The conduct report reflects that H. Hermann, Jackson's appointed staff advocate, signed the report as the "staff member delivering copy to offender."

¶ 79. By contrast, Jackson characterizes Lt. Zank's question about waiver as "inappropriate." However, we note that "[a]n inmate may waive the right to a due process hearing in writing at any time," and it is standard protocol to provide inmates notice of the right to a hearing and the option to waive it. *See* Wis. Admin. Code DOC §§ 303.76(1)(c), 303.76(2).

¶ 80. If Lt. Zank did in fact have a substantial role in building the case against Jackson, then her impartiality might reasonably be questioned. Yet, there is nothing in the record to support such a conclusion. Based on this sparse record, we cannot conclude as a

---

[28] Although the respondents assert that the warden and the inmate complaint examiner both made findings of fact that Lt. Zank's involvement was not "substantial," that determination is actually a question of law.

matter of law that Lt. Zank's involvement in the incident was "substantial."

¶ 81. In sum, we determine that the video footage is inconclusive and neither undermines nor contradicts the evidence considered by the adjustment committee. We further conclude that with or without the video footage, there was sufficient evidence of Jackson's guilt. Under the facts presented by this case, we need not and should not determine whether any version of *Brady*—limited or otherwise—applies to prison disciplinary proceedings.

¶ 82. Finally, based on this record, we cannot conclude as a matter of law that Lt. Zank's involvement in the incident was "substantial." Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 83. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Darnell Jackson is not a sympathetic figure in seeking relief from this court. Darnell Jackson is in prison. He was convicted of one count of first-degree reckless injury and two counts of first-degree reckless endangering safety. He is a repeat offender. Furthermore, while he was serving his prison term, Darnell Jackson was convicted of battery by a prisoner; he was sentenced to a consecutive four-year term for that offense.

¶ 84. Jackson is before the courts once again because a prison disciplinary committee, called the Adjustment Committee, found that Jackson "more likely than not" committed the act of inciting a riot.[1] As a result of this finding, Jackson was sentenced to 360 days in segregation, and he lost 179 days of good-time

---

[1] Wis. Admin. Code § DOC 303.18, 303.76(6)(b)(c) (Dec. 2006).

credit. His mandatory release date was extended so that he is serving an additional six months in prison.

¶ 85. The essence of Jackson's arguments in the circuit court, the court of appeals, and this court is that he did not get a due process hearing, that is, that his disciplinary proceeding did not comply with the federal and state constitutional guarantees of due process and with the procedures set forth in the Department of Corrections administrative regulations.

¶ 86. Clearly, a prisoner in a disciplinary hearing does not have the same panoply of rights as a defendant in a criminal trial or a person who is not institutionalized. Prisoners' rights are limited for the safety and security of inmates, prison staff, personnel, and visitors.[2]

¶ 87. Just as clearly, a prisoner does not forfeit all rights at the prison gate. The seminal United States Supreme Court case governing the constitutional rights of prisoners is *Wolff v. McDonnell*, 418 U.S. 539 (1974), and this court has adhered to its teachings. The United States Supreme Court has declared that though an inmate's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country."[3]

¶ 88. Beyond the constitutional due process rights due prisoners, prisoners are entitled to whatever due

---

[2] "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a reaction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948).

[3] *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974).

process rights are afforded them by the prison disciplinary regulations.[4] When the Department fails to abide by its own regulations, the proceedings are rendered invalid.[5]

¶ 89. The Department of Corrections has set forth regulations governing prison discipline for a major violation such as inciting a prison riot. The regulations provide that the institution "shall inform the inmate of . . . [t]*he right the inmate has to a due process hearing . . . .*"[6] Jackson was informed of his right and chose to have a due process hearing.

¶ 90. The court's difficulty in deciding Jackson's due-process-based objections to the disciplinary hearing is evidenced in the long and unusual history of the case and the majority opinion's failure to come to grips with the due process issues Jackson has raised.

¶ 91. The case has been pending in this court for an unusually long time, from April 2009, the date the petition for review was granted, until the mandate, December 14, 2010. Jackson filed two sets of briefs and a memorandum brief; the State did the same. The parties have been before the court twice in oral argument (once in December 2009; the other time in September 2010). Between the two oral arguments the court remanded the matter to the circuit court by an unpublished order dated

---

[4] *State ex rel. Riley v. DHSS,* 151 Wis. 2d 618, 623, 445 N.W.2d 693 (Ct. App. 1989) (Wis. Admin. Code binds the Department of Corrections to the regulations it promulgates).

[5] *See State ex rel. Anderson-El v. Cooke,* 2000 WI 40 ¶ 20, 234 Wis. 2d 626, 610 N.W.2d 821 ("Very simply, the Department did not comply with its own notice requirement under § DOC 303.81. Because it failed to abide by its own regulations, the proceedings are rendered invalid.").

[6] Wis. Admin. Code § DOC 303.76(1)(c) (Dec. 2006) (emphasis added).

311

February 2, 2010, to receive the videos.[7] On June 4, 2010, the court ordered the parties to file memoranda regarding the outcome of the remand.

¶ 92. Upon consideration of the parties' memoranda regarding the outcome of the remand, on June 23, 2010,[8] the court ordered the parties to address, inter alia, the sufficiency of the evidence in the light of the video evidence received on remand and *Brady* concerns (that is, whether the Department of Corrections violated Mr. Jackson's due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to disclose the video to Mr. Jackson).[9]

¶ 93. The majority opinion recognizes that "our inquiry is focused on whether the procedures employed by the adjustment committee satisfied due process," majority op., ¶ 39, and that "the touchstone of our analysis is whether the procedures used by the committee were fundamentally fair," majority op., ¶ 51. But the majority meanders off course, distracting itself and

---

[7] Unpublished order dated Feb. 10, 2010 (Roggensack, Ziegler, & Gableman, JJ., dissenting).

[8] The June 23, 2010 unpublished order directed the parties to file further briefs addressing the following:

(1) whether, in light of the video evidence received by the circuit court of remand, sufficient evidence exists to sustain the adjustment committee's finding that Mr. Jackson incited the riot at New Lisbon Correctional Institution on November 11, 2004; (2) whether the DOC violated Mr. Jackson's due process rights under *Brady v. Maryland* [373 U.S. 83 (1963)], by failing to disclose to Mr. Jackson the video received by the circuit court on remand (including whether the circuit court properly determined that the video was neither material nor exculpatory); and (3) whether the respondents-respondents agree with and/or stipulate to the factual descriptions of the contents of the video set forth in Mr. Jackson's post-remand memorandum.

[9] The court does not address *Brady v. Maryland,* 373 U.S. 83 (1963). Majority op., ¶ 72 n.27.

the reader from the "focus of," and "the touchstone of," the inquiry. It ignores the procedures used by the Adjustment Committee in the disciplinary proceeding and instead reviews only the sufficiency of the evidence presented against Jackson.[10]

¶ 94. By avoiding the analysis of whether the Adjustment Committee acted according to law, the

---

[10] The majority opinion suggests that the proper analysis is the sufficiency of the evidence because Jackson himself raised and advanced the issue of the sufficiency of the evidence in this court. Majority op., ¶ 54 n.19.

In his first set of briefs, Jackson argues that the lack of videos undermined the evidence presented so that he should prevail on a due process claim based on insufficient evidence. Brief and Appendix of Darnell Jackson at 18–20.

After remand, when the circuit court received videos, Jackson asked this court to allow the parties to submit supplemental briefing on the sufficiency of the evidence. *See* Post-Remand Memorandum of Petitioner Darnell Jackson dated June 18, 2010, at 19. On June 23, 2010, the court ordered the parties to brief the sufficiency of the evidence issue. Jackson's request was for supplemental briefs. Supplemental briefs are briefs in addition to the original briefs, not replacements or substitutions for the original.

Jackson's supplemental argument was initiated by the remand order of this court and focused on the impact of the video evidence presented to the circuit court as directed by this court. His supplemental arguments do not extinguish his prior arguments asserting that the disciplinary proceeding was procedurally deficient in a number of ways, thereby violating Jackson's due process rights.

At the second oral argument after the remand, Jackson's counsel asserted that the conclusions of the Adjustment Committee should be reversed on three grounds. He argued, "First, the process that the Department of Corrections used in this case was not in accordance with law. When the Warden realized that the video did not substantiate the finding of guilt he ordered the

313

majority shirks its responsibility on certiorari review to ensure that Jackson was afforded his constitutionally and statutorily protected due process rights.

¶ 95. Rather than focusing on whether due process was afforded, the majority concludes that because there was sufficient evidence on which the Adjustment Committee and Warden could have based their decisions, the Adjustment Committee's decision stands.

¶ 96. But, if the procedure before the Adjustment Committee was defective, the sufficiency of the evidence does not save the proceeding. Procedural rules are designed to ensure that relevant evidence is brought forth to enable the decision maker to reach the correct result. Defects rendering the procedure violative of constitutional and statutory due process render the evidence presented suspect. Thus, the sufficiency of the evidence is not the proper analysis when the focus or touchstone of the court's inquiry, as the majority opinion acknowledges, is whether Jackson got a due process hearing before the Adjustment Committee.

¶ 97. This court on certiorari review is limited to reviewing the record.[11] It is the Department of Corrections' obligation to present the record for judicial review. Yet on the face of the documents in the record before this court it is beyond dispute that this court does not have the record of the disciplinary proceedings —the videos are missing. Because the court does not

video removed rather than instruct the disciplinary committee to consider that video in connection with the other evidence and reconsider its findings."

[11] *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 120, 289 N.W.2d 357 (Ct. App. 1980). *See also Klinger v. Oneida County,* 149 Wis. 2d 838, 846, 440 N.W.2d 348 (1989); *State ex rel. Whiting v. Kolb,* 158 Wis. 2d 226, 233, 461 N.W.2d 816 (Ct. App. 1990).

314

have a record of the evidence upon which the Adjustment Committee relied, I conclude that due process has been violated and Jackson must be accorded a new hearing that complies with constitutional and statutory due process requirements.

¶ 98. Moreover, a number of other defects are also apparent in the record of this disciplinary proceeding. The totality of the circumstances, the cumulative effect of the procedural defects, leads me to conclude that Jackson did not get a due process hearing as required by the federal and state constitutions and the regulations of the Department of Corrections.

¶ 99. And so here's the puzzle: What happened to the procedures used being the "focus" and "touchstone" of the majority's analysis? When the majority doesn't know what evidence was before the Adjustment Committee or Warden, how can the majority conclude whether there was sufficient evidence for the Committee or Warden to determine Jackson's guilt? On the basis of this defective record, how can the majority conclude, on certiorari review of the record, whether the actions of the Adjustment Committee or Warden were arbitrary or oppressive or unreasonable?

I

¶ 100. Jackson contends, inter alia, that the Adjustment Committee relied on videos to find Jackson guilty; that the videos were therefore part of the record that Jackson was entitled to have reviewed on certiorari; and that the Department of Corrections cannot arbitrarily remove the videos from the record.[12] He

[12] Brief and Appendix of Darnell Jackson at xii, 26–27.

315

asserts that he "is entitled to have a court review the committee's finding based on a full record."[13] I agree with Jackson's reasoning.

¶ 101. On certiorari, courts are limited to reviewing the agency record.[14]

¶ 102. On its face, the record is flawed. The court does not have a record of the evidence upon which the Adjustment Committee relied. The Adjustment Committee's decision states that the Committee relied on videos in finding Jackson guilty. No videos were part of the record initially sent to the court. No one knows whether the videos sent to the court on remand are the videos that the Adjustment Committee viewed and relied upon in finding Jackson guilty.

---

[13] Reply Brief of Petitioner Darnell Jackson at 1. "The DOC's failure to produce the video as part of the record on certiorari review—or at any time—precluded a fair review by the lower courts and violated Jackson's due process rights." Reply Brief of Petitioner Darnell Jackson at 3.

"Although the Committee's report identifies the video as evidence that it considered before finding Jackson guilty, Respondents refuse to produce it. This is error: Jackson is entitled to have a court review the committee's finding based on the full record." Reply Brief of Petitioner Darnell Jackson at 1.

[14] *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 120, 289 N.W.2d 357 (Ct. App. 1980). *See also Klinger v. Oneida County,* 149 Wis. 2d 838, 846, 440 N.W.2d 348 (1989); *State ex rel. Whiting v. Kolb,* 158 Wis. 2d 226, 233, 461 N.W.2d 816 (Ct. App. 1990).

Moreover, the court's review of the agency decision is limited to four inquiries: (1) whether the agency acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action is arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the agency might reasonably make the determination in question. *State ex rel. Hoover v. Gagnon,* 124 Wis. 2d 135, 140, 368 N.W.2d 657 (1985).

316

¶ 103. " '[A] written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action" is a basic due process right.[15]

¶ 104. A comprehensive and adequate record must be kept and provided to the courts for purposes of review, as the majority opinion acknowledges.[16] A written record, according to the United States Supreme Court, helps insure that administrators will act fairly and protects the rights of the inmate.[17] "Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others."[18]

¶ 105. The written record may exclude certain items of evidence when personal or institutional safety is implicated. But in these circumstances the record should indicate the fact of the omission and the reason for the omission.[19]

¶ 106. The regulations of the Department of Corrections that promise a due process disciplinary hearing envision a written record of the hearing made by the Adjustment Committee. It need not be a verbatim record, but a written record has to be made. A warden,

[15] *Wolff,* 418 U.S. at 564–65 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972)).

[16] *See* majority op., ¶ 45; *State v. Goulette,* 65 Wis. 2d 207, 216, 222 N.W.2d 622 (1974).

[17] *Wolff,* 418 U.S. at 565:

Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly.

[18] *Wolff,* 418 U.S. at 565.

[19] *Id.*

the courts, or another body that "may take action partly in reliance upon the decision of the disciplinary committee must not be compelled to guess as to the facts relied upon and the reasons for the decision of the committee."[20] The regulations provide that on appeal, the warden "shall review all records and forms pertaining to the appeal."[21] Further, a court on certiorari review of an agency decision is, as we have stated previously, limited to the record.

¶ 107. Not only must there be a written record of the evidence upon which the fact finder relied, but constitutional due process and the regulations envision that the inmate will be given a written statement as to the evidence relied upon by the decision maker.[22] The Department of Corrections' printed form for the decision of the Adjustment Committee (entitled "Disciplinary Hearing—Reasons for Decision and Evidence Relied On") envisions that the evidence relied upon is

---

[20] *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 124, 289 N.W.2d 357 (Ct. App. 1980) (holding that a bare listing by the disciplinary committee of the reports and statements before it is insufficient to meet the procedural due process requirements of *Wolff* and the Department of Corrections' own procedural rules; citing *Hayes v. Walker,* 555 F.2d 625, 633 (7th Cir. 1977) ("This general finding [merely incorporating the reports before it] does not ensure that prison officials will act fairly. Nor will this finding protect against subsequent collateral effects based on misunderstanding of the initial decision.")).

[21] Wis. Admin. Code § DOC 303.76(7)(b) (Dec. 2006).

[22] *Wolff,* 418 U.S. at 563–64 (one of the procedures that must be provided to prisoners to satisfy minimum due process is "a written statement of the factfinders as to the evidence relied upon and reasons for the disciplinary action taken"); Wis. Admin. Code § DOC 303.76(6)(f) (Dec. 2006) ("After the hearing the Adjustment Committee [shall]: . . . Provide the accused inmate and the inmate's advocate, if any, a written copy of the decision with reasons for the decision.")

summarized on the form and that a copy of the decision, which relates the evidence relied on and the reasons for the decision, is given to the inmate.[23] I am attaching a copy of the Decision of the Adjustment Committee in the present case as Exhibit A so the reader can see the Decision and more easily follow the procedure.

¶ 108. The Department of Corrections regulation governing the due process hearing (Wis. Admin. Code § DOC 303.76) provides that the accused inmate is present at the hearing and may present evidence. These inmate's rights may be limited in some instances for security concerns. In the present case, for example, in compliance with the regulations, Jackson was given a summary of the signed statements of witnesses who did not appear and whose identity was not revealed because of a risk of harm to the witnesses.[24]

¶ 109. The problem in the present case is that the Adjustment Committee's Decision states in two places that it relied on video evidence in determining Jackson guilty of inciting a riot, but no one knows whether the Adjustment Committee or the Warden ever saw any video, and if either did, what video was seen.[25] If the

[23] Wis. Admin. Code § DOC 303.76(6)(f) (Dec. 2006) ("After the hearing the adjustment committee [shall]: . . . (f) Provide the accused inmate and the inmate's advocate, if any, a written copy of the decision with reasons for the decision."

[24] *Wolff,* 418 U.S. at 563–64; Wis. Admin. Code § DOC 303.76(5)(b) (Dec. 2006) (witnesses appear at hearing); Wis. Admin. Code § DOC 303.81(5) (Dec. 2006) (if testifying poses a risk of harm to a witness, the adjustment committee may consider a corroborated signed statement under oath from the witness without revealing the witness's identity).

[25] A majority of this court, apparently troubled by the incomplete record before it and prompted by Jackson's claims

video had been shown at the hearing, then Jackson would have viewed the video unless the Committee determined that security reasons required that he not see it. Nothing in the record suggests that the Committee determined that he could not be present for a viewing of video evidence.

¶ 110. Initially, on Jackson's appeal to the Warden, the Warden affirmed the Adjustment Committee's Decision, which twice referred to videos as evidence to support its conclusion. The Warden could have modified the Adjustment Committee's decision or returned the case to the Adjustment Committee to correct the record at that time. *See* Appeal of Adjustment Committee or Hearing Officer's Decision (attached as Exhibit B); Wis. Admin. Code § DOC 303.76(7)(c) (Dec. 2006).[26] After

that *Brady v. Maryland,* 373 U.S. 83 (1963), applies to prison discipline proceedings, remanded this case to the circuit court to receive video evidence and determine whether the evidence was exculpatory.

My analysis of the present case does not raise a *Brady* issue. In *Brady,* the prosecutor failed to turn over evidence to the defendant when the evidence was not used at trial. In the present case the video was apparently used as evidence by the Adjustment Committee.

Jackson acknowledges that there is no requirement that prison officials produce physical evidence supporting the inmate's guilt for inspection at his disciplinary hearing. He argues, however, that when the record was corrected to indicate that the video was not inculpatory, Jackson obtained a right to view that evidence under *Brady.* Brief and Appendix of Darnell Jackson at 23.

[26] Wisconsin Admin. Code § DOC 303.76(7)(c) (Dec. 2006) provides that on appeal:

(c) The warden's decision shall be one of the following:

1. Affirm the adjustment committee's decision and the sentence.

Jackson sought judicial review of the Warden's decision, the Warden, on August 29, 2005, issued a memorandum sending the Adjustment Committee's Decision back to the Adjustment Committee with instructions to change the Decision to remove reference to any video from the Decision. *See* Warden's memorandum (attached as Exhibit C). The Warden's memorandum appears to be inconsistent with the regulations. More about this later.[27]

¶ 111. As the majority opinion explains, the Warden's memorandum ordering the removal of the Decision's reference to a video can be interpreted in different ways. The Warden wrote that he could find "no substantiation that there was a video showing Mr. Jackson's involvement in this incident." The memorandum may mean that the Warden concluded the video failed to show that Jackson was involved, or that the video was irrelevant to the decision, even though the Adjustment Committee thought the video supported guilt, or that the Warden concluded that no video existed in the record.[28] *See* majority op., ¶ 44 n.17. Any inter-

---

2. Modify all or a part of the adjustment committee's decision or sentence.

3. Reverse the adjustment committee's decision, in whole or in part.

4. Return the case to the adjustment committee for further consideration or to complete or correct the record.

[27] *See* ¶ 50–52, *infra*.

[28] The Warden's memorandum states: "I can find no substantiation that there was video showing Mr. Jackson's involvement in this incident. . . . Therefore, I am remanding this back to the original hearing committee *only* for a correction of the record on form DOC-84 [the Decision of the Adjustment Committee] regarding physical evidence used for this hearing."

pretation raises troubling questions.[29] The first two inferences result in the conclusion that the record before this court is not the same as the record before the Adjustment Committee. The third inference suggests, at best, sloppy record keeping, and at worst, that the Adjustment Committee made a determination of guilt without awareness of the evidence supporting that determination.

¶ 112. The record does not show who received the Warden's instructions and who acted on them. The record does show, however, that someone struck one reference to the video on the Adjustment Committee's Decision, but not a second reference. The initials next to the single strike-out appear to be "PZ," which might refer to Lt. Pamela Zank, a person who investigated the incident and was also a member of the Adjustment Committee. *See* Exhibit A.

¶ 113. When instructions are given in court to strike a matter from the record, the matter continues to be included in the record but shown as struck. The matter struck is just not considered by the decision maker. In the present case, every video was literally removed from the record.

¶ 114. Therefore, even if the Adjustment Committee, the Warden, or both saw a video, the court does not know what video or videos each viewed.

¶ 115. The State produced four video clips on remand of the matter to the circuit court, and these clips are now part of the record in the present case. One of these video clips was shown to this court at oral

---

[29] No one questions the Warden's motives in changing the Decision of the Adjustment Committee. The issue before the court is the Warden's authority and the effect of his act on the ability of the courts to perform certiorari review.

argument. The majority opinion relies on this video to conclude that it does not help Jackson (even though it is arguable that it impeaches the statements of the confidential informants).

¶ 116. How can the majority rely on a video when no one knows whether that video was the one that the Adjustment Committee or the Warden saw? Neither the Department of Corrections nor the State's attorney could attest to whether the videos presented to the circuit court on request of this court were the ones that the Adjustment Committee received. The conduct report states that videos from the New Lisbon Correctional Institution A Unit dayrooms, A Unit courtyard, and exterior cameras were used in investigating the riot. Neither the Department of Corrections nor the State's attorney could verify that the videos presented to the circuit court (and to this court) were the ones seen by the investigators, the Adjustment Committee, or the Warden after the riot.[30]

¶ 117. During oral argument the court questioned counsel for the State about how these four video clips came to the State's attention. The Assistant Attorney General responded that she asked the Department of Corrections for "all video evidence on the riots," and "this is what we got."

¶ 118. Thus, we are left with a record stating that the Adjustment Committee relied on videos that the Warden wanted stricken. The court can not be sure whether the videos now in our record were viewed by the Adjustment Committee or the Warden, or neither.

---

[30] The video clips that are now in the record seemingly depict two areas based on their electronic titles, New Lisbon Correctional Institution A Unit dayroom side A and side B. No clip is labeled as depicting the A Unit courtyard, or the view from any New Lisbon Correctional Institution exterior camera.

The court has no reason to rely on any videos now included in the record. And so, this court does not have a record of the evidence that was before the Adjustment Committee.

¶ 119. The lack of a record of the evidence the Adjustment Committee viewed in determining guilt is a significant procedural defect in the present case. This is a certiorari review limited to the record of the Adjustment Committee. It is the duty of the Department of Corrections to maintain a proper record and forward it to the courts for review when review is requested. Because the court does not have a record of the evidence upon which the Adjustment Committee relied, I conclude that due process has been violated and Jackson must be accorded a new hearing that complies with constitutional and statutory due process requirements.

## II

¶ 120. There are a number of other defects apparent in the record of this disciplinary proceeding. The cumulative effect of all the errors is that Jackson did not get a due process hearing that complied with constitutional and statutory due process requirements.

¶ 121. First, the Conduct Report on which the Adjustment Committee relied as evidence concluded, on the basis of the confidential informant statements, that Jackson met with the rioters "seconds before" the riot took place. Nothing in the statements of the confidential informants and nothing else in the record supports this temporal element.

¶ 122. Jackson argued as follows: "The video evidence shows that the confidential informant testimony that Jackson met with the rioters to 'call' the riot

324

'seconds' before it occurred is inaccurate. No other evidence supports the DOC's finding that Jackson incited the riot . . . ."[31]

¶ 123. The Adjustment Committee concluded, after evaluating all of the evidence, that "the statements in the conduct report are correct." *See* Exhibit A, Disciplinary Hearing Reasons for Decision and Evidence Relied On. The confidential informant statements do not support the temporal conclusion in the conduct report. The video evidence presented to the circuit court does not support the temporal element that the Adjustment Committee concluded was correct. Under what evidence can reasonable minds conclude that the statements in the conduct report, and therefore the Adjustment Committee's conclusions, are correct?

¶ 124. Second, the Adjustment Committee limited the number of Jackson's witnesses to two, the number provided for in the regulations.[32] It is within the discretion of a hearing entity to limit the witnesses. Here the evidence against Jackson was in the form of confidential informant statements. Although confidential informant statements are sufficient evidence in a disciplinary hearing, Jackson did not know who the informants were and could not cross-examine them. If the informants were fellow inmates, they may have been biased because they were the culprits themselves or they received favors for their statements. Under such circumstances it would seem that Jackson should have been given the benefit of additional witnesses in his

[31] Reply Brief of Petitioner Darnell Jackson Regarding Outcome of Remand at 1, 18–19.

[32] Wis. Admin. Code § DOC 303.81(1) (Dec. 2006).

favor, barring legitimate safety concerns (none of which were noted on the record).[33]

¶ 125. Jackson argued in his record of witness testimony that the testimony he wished to submit made clear that the hallway meeting of which he was accused never occurred. The Adjustment Committee, without elaboration, denied his request, stating that Jackson "Did Not Provide Good Cause To Demonstrate Additional witnesses could Provide Essential Testimony" (capitalization in original). Jackson asserts that the Committee ignored this evidence.[34]

¶ 126. Third, inmates are entitled to an impartial Adjustment Committee. Constitutional due process so requires,[35] as do the regulations.

¶ 127. Jackson argued that "[t]he DOC violated its own regulations in this case when it permitted to Lt. Zank to both investigate and judge Jackson's alleged

---

[33] Jackson provided the names of two fellow inmates who would contradict the statements of the informants and a correctional officer who would testify that before the riots Jackson denied being in a gang. The reviewing staff decided that these witnesses would not be permitted to attend because Jackson "did not provide good cause to demonstrate additional witnesses could provide essential testimony."

Jackson did not make this argument before this court. He raised it in his administrative appeal.

[34] Post-Remand Memorandum of Petitioner Darnell Jackson, June 18, 2010, at 6.

[35] *Wolff,* 418 U.S. at 571. *Cf. In re Murchison,* 349 U.S. 133, 136–37 (1955) ("[T]o perform its high function in the best way 'justice must satisfy the appearance of justice.' . . . Having been a part of that [single judge-grand jury] process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused.").

involvement in the riot"[36] and "Lt. Zank's participation in both the investigation and the hearing raises due process concerns.[37] I agree.

¶ 128. Lt. Zank served on the team that investigated the riot and was one of the members of the Adjustment Committee that found Jackson guilty The Department of Corrections regulations prohibit individuals "with a substantial involvement in an *incident*" from serving on the Adjustment Committee for a hearing on the subject of that incident.[38] It is not clear in the regulations whether "involvement in an incident" means involvement in the riot here or involvement in the investigation of the riot. We do not know whether Lt. Zank was involved in the riot. The record indicates she was involved in the investigation.

¶ 129. In any event, ordinarily, an investigator or prosecutor does not serve on a hearing (decision making) committee, to avoid any question of the integrity of the hearing procedure or impartiality of the hearing examiners. Allowing an individual substantially involved in investigating a prison incident to sit in judgment of an inmate at a disciplinary proceeding involving that incident "may raise such doubts about the integrity of the hearing procedure and the impar-

---

[36] Brief and Appendix of Darnell Jackson at 15.

[37] *Id.* at 16.

[38] Wis. Admin. Code § DOC 303.82(2) (Dec. 2006):

No person who has substantial involvement in an incident, which is the subject of a hearing, may serve on the committee for that hearing. Committee members shall determine the subject matter of the hearing in advance in order to allow replacement of committee members if necessary and thereby avoid the necessity of postponing the hearing.

tiality of its participants so as to trigger due process considerations."[39]

¶ 130. Lt. Zank was an officer who interviewed Jackson after the riot. Jackson alleges that Lt. Zank requested that he waive his due process rights. Lt. Zank apparently was a leading member of the Adjustment Committee. She completed the Disciplinary Hearing Decision form , giving the reasons for the decision, including the evidence upon which the Committee relied. She appears to be the person who struck a reference to a video from the Decision on the instructions of the Warden.

¶ 131. I agree with the majority opinion that the record on Lt. Zank's involvement in the riot or the investigation before the Adjustment Committee was formed is sparse. But on the basis of the limited written record, the aura and aroma of substantial involvement in the investigation are present and raise due process concerns, regardless of the meaning of the phrase "substantial involvement in an *incident*" appearing in the regulations.

¶ 132. Fourth, nothing in the regulations gives the Warden authority to send the record back for correction of the Adjustment Committee's Decision after the Warden had previously affirmed the Adjustment Committee's Decision. I agree with Jackson, who

[39] *Redding v. Fairman,* 717 F.2d 1105, 1113 (7th Cir. 1983). *See also Whitford v. Boglino,* 63 F.3d 527, 534 (7th Cir. 1995) ("If an officer is substantially involved in the investigation of the charges against an inmate, due process forbids that officer from serving on the adjustment committee."); *Piggie v. Cotton,* 342 F.3d 660, 667 (7th Cir. 2003) (due process forbids "officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the board hearing the charge").

asserts: "For certiorari to provide a legitimate avenue of independent judicial review, the DOC cannot 'correct' the record after a prisoner petitions for review. Nor does due process permit the DOC to modify the record on which its decision was based. . . . Respondents [the State officials] offer no authority and none of which Jackson is aware supports the warden's decision to remove evidence considered by the disciplinary committee."[40]

¶ 133. The regulations state that within 60 days of an inmate's appeal of an Adjustment Committee Decision to the Warden, the Warden may either affirm the Decision or return the Decision to the Adjustment Committee for correction, but may not do both. Wis. Admin. Code § DOC 303.76(7)(c) (Dec. 2006). The Warden's unilateral memorandum returning the record only for correction in preparation to transmit the record to the circuit court does not cite any regulation supporting his authority to remand the record to the Adjustment Committee after he affirmed the Adjustment Committee's Decision and the sentence.[41]

---

[40] Reply Brief of Petitioner Darnell Jackson at 5, 7.

[41] The Warden cites to § DOC 303.76(6)(e) in his memorandum; however, that regulation relates to the Adjustment Committee's obligation to inform the inmate of the hearing decision. In contrast, the majority cites to § 303.76*(7)(e)*. *See* majority op., ¶ 24 & n.10 (emphasis added). That regulation states as follows: "The warden may at any time review the *conduct report* and act on it unilaterally as if there were an appeal" (emphasis added). In directing the change to the reference to the video, the Warden was not reviewing the conduct report as authorized by § DOC 303.76(7)(e); the Warden was reviewing the Decision of the Adjustment Committee. Section DOC 303.76(7)(e) therefore does not apply in the present case and does not authorize the Warden's conduct.

329

¶ 134. In contrast, § DOC 303.76(7)(e) of the regulations authorizes the Warden to "review the *conduct report* and act on it unilaterally as if there were an appeal" (emphasis added). In directing the change to the reference to the video in the Adjustment Committee's Decision, the Warden was not reviewing and acting unilaterally on the conduct report as authorized by § DOC 303.76(7)(e); the Warden was reviewing and acting unilaterally on the Decision of the Adjustment Committee.

¶ 135. Each of these four defects taken alone may not constitute a violation of due process. However, these defects taken together, along with the missing video evidence, add up to a proceeding that does not comply with constitutional or statutory requirements.

¶ 136. In the present case, in which the Adjustment Committee must weigh the credibility of Jackson and his supporting witnesses against the credibility of confidential informant statements, the procedural defects are significant. The cumulative effect of the procedural errors undermines confidence in the Adjustment Committee's findings and Decision.[42] The errors were prejudicial.[43]

---

[42] *State v. Harris,* 2008 WI 15, ¶ 110, 307 Wis. 2d 555, 745 N.W.2d 397 ("The cumulative effect of several errors may, in certain instances, undermine a reviewing court's confidence in the outcome of a proceeding.") (citing *State v. Thiel,* 2003 WI 111, 264 Wis. 2d 571, 665 N.W.2d 305; *Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000); *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990); *United States v. Wallace,* 848 F.2d 1464, 1472 (9th Cir. 1988)); *State v. Thiel,* 2003 WI 111, ¶ 60, 264 Wis. 2d 571, 665 N.W.2d 305 (determining that the cumulative effect of deficient assistance by counsel may in some instances establish prejudice).

[43] Wisconsin Admin. Code § DOC 303.87 (Dec. 2006) provides: "If staff does not adhere to a procedural requirement

¶ 137. On the record before this court, we do not know what evidence was before the Adjustment Committee, and with the videos gone, the court does not know the basis for the Adjustment Committee's Decision. Courts on certiorari review must be able to review the record upon which the Adjustment Committee relied or the court must remand the cause for rehearing. A reviewable record does not exist in the present case. On the basis of the procedural deficiencies in the record before the court, the court cannot decide that the Adjustment Committee's actions were not arbitrary, oppressive, or unreasonable and representative of its will and not its judgment. I conclude that Jackson's due process rights have been violated.

¶ 138. For the reasons set forth, I would reverse the decision of the court of appeals denying Jackson's writ of certiorari. I would remand the cause to the Department of Corrections for a rehearing. Accordingly, I dissent.

---

under this chapter, the error is harmless if it does not substantially affect a finding of guilt or the inmate's ability to provide a defense."

Because the cumulative effect of the errors does affect a finding of guilt, the violations of the procedural requirements in this case are not harmless error.

## EXHIBIT A

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-71 (Rev. 2.03)

WISCONSIN
Administrative Code
Chapter DOC 303

### NOTICE OF MAJOR DISCIPLINARY HEARING RIGHTS AND WAIVER OF MAJOR HEARING AND WAIVER OF TIME
(for Major or Minor Disciplinary Hearings)

| OFFENDER NAME | DOC NUMBER | INSTITUTION | CONDUCT REPORT NUMBER |
|---|---|---|---|
| Jackson, Darnell | 195723 | 34 | 1731337 |

### NOTICE OF MAJOR DISCIPLINARY HEARING RIGHTS

1. You have been accused and charged with a violation(s) of the rules and regulations of the institution which the Administrative Rule DOC 303.68(3) or Security Director has designated as a major offense as stated in the above-referenced Conduct Report given to you on __1-24__ , 20 _05_

2. You are advised that, if the Adjustment Committee or the Hearing Officer determines you have committed the violation(s) of institution rules and regulations alleged, you may be subject to penalties as enumerated in DOC 303 84(1)(a-k) including but not limited to the following:
 A. Adjustment Segregation;
 B. Program Segregation;
 C. Loss of Time or Extension of MR Date;
 D. Restitution;
 E. Loss of Other Specified Privileges.
 F. Disciplinary Separation.

3. You are further advised that, if the Adjustment Committee or Hearing Officer determines you have committed the violation(s) of institution rules and regulations alleged, the following may result:
 A. Recommendation to Program Review Committee for:
 1. Reclassification of Security Rating;
 2. Change of Program Assignment;
 3. Transfer to Another Institution;
 4. Removal from the Work / Study Release Program;
 5. Suspension of Leave;
 B. Change of Housing Assignment;
 C. Suspension of Visiting or Corresponding Privileges;
 D. Consideration as a Basis for Denying You Parole.

4. You are further advised that you have the right to respond to the alleged violation(s) and be heard by the Adjustment Committee or a Hearing Officer at a disciplinary hearing. You have the right to appear at such hearing on your own behalf and also to be assisted by a designated staff advocate. If an offender objects to the assignment of a particular advocate because the advocate has a known and demonstrated conflict of interest in the case, the Warden/Superintendent shall assign a different staff member to serve as the offender's advocate.

NAME OF STAFF ADVOCATE APPOINTED / OR DESIGNATED BY WARDEN (if hearing is non-waived)

H. Hermann

If you refuse to participate in said hearing, a staff advocate may be appointed for you and the hearing will be held while you stand mute.

5. At said hearing, you or your staff advocate will have the right to question any adverse witnesses. The Adjustment Committee or Hearing Officer may permit questions or require you or your staff advocate to submit questions to the Adjustment Committee or Hearing Officer to be asked of the Witness. Repetitive, disrespectful and irrelevant questions may be forbidden.

6. At said hearing, you or your staff advocate may present oral, written, documentary, physical evidence and evidence from voluntary eye witnesses. If there are persons who are eye witnesses (institution offender(s) and / or staff) to the alleged violation(s), you may request, in writing, within 2 days of the service of this notice when no advocate is assigned and within 2 days of the initial contact by your advocate when an advocate is assigned, using form DOC-73 which will be provided to you, that any one or more of those witnesses be present at said hearing. You may request no more than 2 witnesses (plus reporting staff member(s)) without good cause. The Security Director may investigate your request to determine if the witnesses should be called. You will be given the decision in writing, which will include, if any of the witnesses are rejected, the reason for rejection.

7. The Security Director may authorize a hearing beyond the 21 day time limit, either before or after the 21st day.
 A. The hearing shall be held no sooner than 2 days, and generally not more than 21 days , after the case you were given a copy of the above-referenced conduct report.

(CONTINUED ON REVERSE SIDE)

8. You are further advised that you may waive the time limits for said hearing and request disposition of the alleged violation(s) or request an extension of the time limits in which to prepare for the hearing. This waiver must also be approved by the Security Director.

9. You are further advised that you may, at any time, waive your right to a formal due process (major) disciplinary hearing.

10. You are further advised that, if you waive your right to a formal due process (major) disciplinary hearing, the alleged violation(s) will be disposed of in accordance with DOC 303.75 which includes:

 A. A hearing consistent with the time frame outlined in # 7 of this form;
 B. You may present your version of the incident;
 C. The staff member(s) who wrote the Conduct Report does not need to be present;
 D. The Hearing Officer Adjustment Committee may question you and otherwise investigate the case and shall decide your guilt or innocence and decide the punishment to be imposed.

11. You are further advised that you may appeal (form #DOC-91) the Hearing Officer's or Adjustment Committee's finding of guilt and / or punishment to the Warden/Superintendent with in 10 days after either a due process hearing or after you receive a copy of the decision, whichever is later.

12. You are further advised that if you refuse to attend the hearing, the hearing may be conducted without you being present.

| I certify that I have read, or has read to me, and fully understand this Notice of Major Disciplinary Hearing Rights. | OFFENDER SIGNATURE | DATE SIGNED |
| | *Darnell Jackson* | 1-24-05 |
| I certify that the offender has read or I have read to him/her the Notice of Major Disciplinary Hearing Rights. | STAFF MEMBER SIGNATURE | DATE SIGNED |
| [ ] OFFENDER REFUSES TO SIGN NOTICE | *M Chumann* | 1-24-05 |

## WAIVER OF FORMAL DUE PROCESS (MAJOR) HEARING:

NOTICE TO OFFENDER: The Security Director made this hearing procedure a formal due process hearing. You have many rights. You may give up all of these rights and have an informal hearing in accordance with DOC 303.75(2)

1. [ ] I READ OR HAD READ TO ME THE NOTICE OF MAJOR (Formal Due Process) DISCIPLINARY HEARING RIGHTS;

2. [ ] I UNDERSTAND WHAT MY RIGHTS ARE,

3. [ ] I UNDERSTAND THAT WHEN I WAIVE MY RIGHTS, I WAIVE THE RIGHT TO;
 A STAFF ADVOCATE;
 TO REQUEST A WITNESS,
 OTHER POSSIBLE RIGHTS IN A FORMAL DUE PROCESS HEARING.

4. [ ] I WAIVE MY RIGHT TO A FORMAL DUE PROCESS HEARING: (also check box a or b)
 a. [ ] I ADMIT I AM GUILTY
 b. [ ] I DO NOT ADMIT I AM GUILTY

TO BE VALID: Offender must check all boxes and sign this statement. This statement must be witnessed and dated.

### WAIVER OF TIME LIMITS: (all Hearings)

[ ] I WAIVE THE 2 DAY TIME LIMIT AND HAVE NO OBJECTIONS TO A HEARING SOONER [ ] I WAIVE THE 21 DAY LIMIT

I have checked the appropriate boxes above and my signature means that:

[ ] I WAIVE A FORMAL DUE PROCESS (MAJOR) HEARING or [ ] I WAIVE TIME LIMITS or

[ ] I WAIVE BOTH DUE PROCESS (MAJOR) HEARING AND THE TIME LIMITS

| OFFENDER SIGNATURE | DATE SIGNED | WITNESS SIGNATURE | DATE SIGNED |
| | | | |

| SECURITY DIRECTOR'S DECISION | SECURITY DIRECTOR SIGNATURE | DATE SIGNED |
| [ ] APPROVED [ ] NOT APPROVED | | |

DISTRIBUTION: (After Security director's Decision): Original – Case File; Copy – Offender; Copy – Security Office; Copy – Advocate

(9)

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-94 (Rev. 07/99)

**DISCIPLINARY HEARING**
REASONS FOR DECISION AND EVIDENCE RELIED ON

WISCONSIN
Administrative Code
Chapters DOC 303 & 304

| OFFENDER NAME | DOC NUMBER | INSTITUTION | CONDUCT REPORT NUMBER |
|---|---|---|---|
| Jackson Richard | 195723 | NLCI | 1731337 |

| TYPE OF HEARING | HEARING DATE | HEARING TIME |
|---|---|---|
| ☐ MINOR (303 76) ☒ MAJOR - Full Due Process (303.76) ☐ MAJOR - Waived (303 76(2)) | 1-26-05 | 6:10 ☐ A ☒ P M |

☒ Conduct Report read aloud to offender. ☐ Offender not present, but given a chance to attend. The committee knew those facts because:
☒ Offender present at hearing

**OFFENDER STATEMENT**

It sounds like to me the two czi are the ones involved. I have never been a vice lord. I dont associate with them. I was cutting someone's hair thats it. Then I was on I thought I was going to rec till this took place. I told cpt Harris I was not involved in gang act.

**EVIDENCE** (The committee relies on the following evidence in finding the offender guilty)

☒ Statement in the Conduct Report # 1731337
☐ Testimony by reporting staff member
☒ Other testimony
☒ Physical evidence (Explain what) czi Artega white diagram - gang-coordinator credential vide
☒ Confidential Witness Statements (attach copy of summary)
☐ Institution rules, policies and procedures
 ☐ rules, policies or procedures were posted
 ☐ rules, policies or procedures are in a handbook given to all offenders
☐ Verbal order (write what order was) _____

☐ Property slips or other information
☐ Special written order was _____
_____
_____

Dissent from Majority and Reasons for Dissent

☐ See Attachments

**DISPOSITION** 8 Adjustment
360 Program Seg PRC

**REASON FOR DISPOSITION** (DOC 303 83)
Inmates are will disciplinary record
Inmate created serious disruption
4 inmate cut w/ serious injury
w/ inmate had knowledge of and commit gang activity risk to
security staff other

| DATE OF DECISION | SIGNATURES OF ADJUSTMENT COMMITTEE MEMBERS OR HEARING OFFICER |
|---|---|
| 1-26-05 | Lt. Pamela Houck |

SIGNATURE OF STAFF MEMBER GIVING COPY TO OFFENDER
Lt. Pamela Houck

DATE COPY GIVEN TO OFFENDER
1-26-05

**DECISION** (Based on the evidence, the committee finds the offender guilty or not guilty of the following offenses.)

| RULE NUMBER | SUBSECTION | | |
|---|---|---|---|
| 1 | 303 | 17 | ☒ Guilty ☐ Not Guilty |
| 2 | 302 | 20 | ☐ Guilty ☒ Not Guilty |
| 3 | | | ☐ Guilty ☐ Not Guilty |
| 4 | | | ☐ Guilty ☐ Not Guilty |

**REASON FOR DECISION**
Committee finds it more likely than not inmate Jackson committed the act of cutting a vick. committee evaluated all the evidence, confidential statements and testimony and reached its conclusion that the statements in the conduct report are correct. committee finds the inmate testimony was credible since it appears to be self-serving in an attempt to avoid disciplinary action. Committee notes staff advocate was present and noted that there was known conflict of interest. Committee finds inmate Jackson guilty of 303.17 as evidence - conduct report, confidential statements support that inmate Jackson did encourage and direct inmates to assault the staff. This involved serious inmate and direct staff were injured, and did commit 303.10.

☐ See Attachments

| SUPERVISOR | |
|---|---|
| Lt. Esten endorsed 6-11-05 | Capt Tim witness confidential not available |

TIME COPY GIVEN TO OFFENDER
7:05 P M

(10)

334

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-84A (Rev. 13/91)

## RECORD OF WITNESS TESTIMONY

This form must be used for all persons giving statements including offender, staff advocate and reporting staff member.

| OFFENDER NAME | DOC NUMBER | INSTITUTION |
|---|---|---|
| Jackson Darnell | 195723 | NLCI |

| HEARING DATE | HEARING TIME | CONDUCT REPORT NUMBER |
|---|---|---|
| 1-26-05 | 6:10 pm | 1731337 |

NAME OF PERSON TESTIFYING
Piel Larry # 180355 ☒ Offender ☐ Reporting Staff Member ☐ Other

SUMMARY OF TESTIMONY (include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)

No +

No I did not see him go in the hall.
I dont remember the time. check the sheet.
I dont remember coming back in - oh yeah I
did I had long hair. he was talking yest
He cupped the hall I did not see him talking to woody

NAME OF PERSON TESTIFYING
Trendwell Bernard # 311419 ☒ Offender ☐ Reporting Staff Member ☐ Other

SUMMARY OF TESTIMONY (include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)

· no we did not go into the hallway - I did not
even see him except at meals
Did no we did not.

NAME OF PERSON TESTIFYING
Heximson ☐ Offender ☐ Reporting Staff Member ☒ Other Adv.

SUMMARY OF TESTIMONY (include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)

nothing to add

NAME OF PERSON TESTIFYING
 ☐ Offender ☐ Reporting Staff Member ☐ Other

SUMMARY OF TESTIMONY (include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)

DISTRIBUTION: Original - Case File Copy - Offender Copy - Security Office Copy - Advocate

(u)

335

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-77 (Rev. 05/03)

WISCONSIN
Administrative Rule
Section DOC 303.86

## DISCIPLINARY HEARING FOR MAJOR VIOLATIONS
### CONFIDENTIAL INFORMANTS

| OFFENDER NAME | | DOC NUMBER |
|---|---|---|
| Jackson, Darnell | | 195723 |

| INSTITUTION | HEARING DATE | HEARING TIME |
|---|---|---|
| NLCI | 1-26-05 | 6:45 |

**Instructions:** Committee fills out this form when a witness refuses to testify in person and the committee finds that testifying would pose a significant risk of bodily harm to the witness.

The Committee considered a statement by the witness that was:

[✓] Signed

[✓] Taken under oath

[✓] Corroborated by one of the following:

 [ ] Other evidence which substantially corroborates the facts alleged in the statement e.g., an eyewitness account by a staff member or circumstantial evidence (describe the evidence relied on)

 _____

 _____

 _____

 [ ] Evidence of a very similar violation by the same person

 (explain) _____
 Note: The committee cannot rely on evidence of a similar violation if the disciplinary decision on the violation was vacated by a court or by the warden/superintendent

[✗] Two anonymous statements by different persons, both signed and taken under oath

[ ] The committee questioned the witness

[ ] The committee gave a summary of the contents of the statement to the offender (attach summary)

DISTRIBUTION: Original - Security Director Copy-Case File

336

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
COC-78A (8/04)

WISCONSIN
Administrative Code
Chapter DOC 303

## SUMMARY OF CONFIDENTIAL INFORMANT STATEMENT(S)

| REFERENCE NUMBER | CONDUCT REPORT NUMBER | DATE |
|---|---|---|
| NLCI 11/11/04 disturbance | 1644412 | 11/28/04 |

INSTRUCTIONS:
A summary of this statement must be presented to the offender at or before the disciplinary hearing.

**STATEMENT #1**

Darnell Jackson is calling it for the Vice-Lords and P-Stones. I saw inmates putting their boots and gloves on and I knew something was going to happen. Vest, Treadwell, Darnell Jackson, and Alvin Kenney were all huddled up first in the hallway. All the people who assaulted the staff are V.L. and P-Stones (Rangers) I also saw Lipsey and Ward outside in the hallway talking to "Whiz" aka Darnell Jackson.

**STATEMENT #2**

Lipsey (Samuel) was on crutches and came back to the unit from HSU. Lipsey stated to the inmate's n the unit that he saw Love being attacked and the guards had him on the ground and were beating him. Treadwell and Vest then went to Whiz (who is first in command) and told him about Love. Whiz was behind the incident. He stated to them, "you guys know what you have to do."

**STATEMENT #3**

(13)

337

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-91 (Rev 11/00)

WISCONSIN
Administrative Code
Chapter DOC 303

## APPEAL OF ADJUSTMENT COMMITTEE OR HEARING OFFICER'S DECISION

| INSTRUCTIONS TO OFFENDER: | Submit both copies of this appeal to the Warden. A copy will be returned to you when the Warden reaches a decision. | | | |
|---|---|---|---|---|
| OFFENDER NAME | | DOC NUMBER | DATE OF DECISION | CONDUCT REPORT # INVOLVED |
| DARNell JAckson | | 195723 | 1-26-05 | 1731337 |

### OFFENDER'S APPEAL

FINDINGS OF GUILT (Do not list findings that you are not appealing) **(1 of 4 Attachments)**

Rule number — Reason for opposing finding of guilty

303.18 I was not involved in any kind of way with the incident that occurred on 11-11-04 at Newlisbon, Corr. Inst. There was insufficient Evidence to find me guilty. The record is void with any direct Evidence to Support that I Encouraged, directed, commanded, coerced, sed or gave A Signal to anyone to participate in a Riot. (Continue: SEE Attachments) 1 of 4

DECISION OF DISPOSITION (Do not list punishment you are not appealing)

Disposition — Reason for appealing disposition

8 days Adjustment
360. program seg.

I'm not guilty! I have never involved my-self with any for of inciting A Riot in almost 14 years nor have I started none. I have not had a major Conduct Report since 1999 which re-sulted in segregation. I'm not guilty!

ADDITIONAL RELEVANT INFORMATION Officer Tina Booth at Newlisbon, Corr. Inst. can verify that I was in the Barbershop and I did not ge into the hallway with Jamie Uest*314828, Alvin Kennedy*366700 OR Bernard Treadwell*311419. Officer Booth open the Barbershop.

SIGNATURE OF OFFENDER _Darnell Jackson_ DATE SIGNED 1-30-05

### OFFENDER'S WAIVER OF TIME LIMITS

I understand that I have the right to have the Warden's review of my appeal completed within 60 days of his/her receipt of this appeal. I hereby waive this time limit.

SIGNATURE OF OFFENDER ___ DATE SIGNED ___

### WARDEN'S RESPONSE

[✓] I affirm the Adjustment Committee/Hearing Officer's decision and the sentence.

[ ] I am modifying all or part of the Adjustment Committee's/Hearing Officer's decision or sentence.

[ ] I reverse the Adjustment Committee/Hearing Officer's decision, in whole or in part.

[ ] I am returning the case to the Adjustment Committee/Hearing Officer for further consideration or to complete or correct the record.

REASON(S) FOR DECISION

After my review of all of the information in the hearing packet, I find sufficient evidence to sustain guilt. I find the evidence outweighs your written statement. I find that it was not have substantial involvement in the incident to withhold not being in the hearing committee. I find no procedural errors, and believe your involvement in this event serious enough to be substantial and warrants the

| DATE APPEAL RECEIVED | SIGNATURE OF WARDEN Disposition given to you. | DATE OF DECISION |
|---|---|---|
| 1/31/05 | _____ , Dan A. Bertrand, Warden Wmoci | 2-14-05 |

EXHIBIT C

Jim Doyle
Governor

Matthew J. Frank
Secretary

**State of Wisconsin
Department of Corrections**

Mailing Address
Racine Youthful Offender
Correctional Facility
Post Office Box 2200
Racine, WI 53401-2200
Telephone (262) 638-1999
Facsimile (262) 638-1777

Date: August 29, 2005

To: Richard Schneiter, Warden
 Wisconsin Secure Program Facility

From: Dan A. Buchler, Warden
 Racine Youthful Offender Correctional Facility

Re: Jackson, Darnell #195723
 Conduct Report # 1731337

Based upon DOC 303.76(6)(e), I have again reviewed this conduct report. I can find no substantiation that there was a video showing Mr. Jackson's involvement in this incident. However, for the reasons I indicated on the initial appeal form dated February 14, 2005, I find no reason to alter the decisions and disposition of the disciplinary hearing that was held on January 26, 2005. Therefore, I am remanding this back to the original hearing committee only for a correction of the record on form DOC-84 regarding physical evidence used for this hearing.

Cc: Darnell Jackson

DAB/vc

A-115

339